## STATE, EX REL. WARREN ET AL., *v.* OGAN ET AL.

[No. 19,502. Filed March 13, 1902. Rehearing denied June 20, 1902.]

SCHOOLS.—*Election of School Trustees.—Municipal Corporations.*—The provision of §5915 Burns 1901, that the common council of each city and the board of trustees of each incorporated town shall at their first regular meeting in the month of June elect three school trustees does not, in terms, apply to cities thereafter created. *pp. 119–125.*

SAME.—*Incorporation of City.—Vacation of Offices of School Trustees.—Municipal Corporations.*—The incorporation of a town as a city does not vacate the offices of school trustees thereof. *pp. 124, 125.*

SAME.—*School Trustees.—Election.—Newly Incorporated City.*—Where the mayor and common council of a newly incorporated city elected three members of the school board instead of one, according to law, without in any way designating which one was elected for three years, and continuously refused to appoint one trustee or to make any other appointment, no one of them was thereby legally elected. *pp. 126, 127.*

From Fountain Circuit Court; *Jere West*, Special Judge.

*Quo warranto* by the State on the relation of Omar P. Warren and another against George Ogan and others to try the title to the offices of school trustees of the city of Veedersburg. From a judgment sustaining a demurrer to the information, relators appeal. *Reversed.*

*C. M. McCabe* and *L. Nebeker*, for appellants.

*W. W. Thornton, D. F. Lemmon, I. E. Schoonover, V. E. Livengood* and *A. T. Livengood*, for appellees.

GILLETT, J.—The important question in this case is, can the common council of a newly incorporated city at once elect three trustees of the school city, on the theory that the offices of trustees of the former school town have, by the act of incorporation, ceased to exist?

State, *ex rel.*, *v.* Ogan.

The determination of this question depends upon the proper construction of §4 of the act of March 6, 1865, (§5914 Burns 1901, §4438 Horner 1901); and §5 of the act of March 12, 1875, §5915 Burns 1901, §4439 Horner 1901. The material portions of said §4 read as follows: "Each civil township and each incorporated town or city in the several counties of the State is hereby declared a distinct municipal corporation for school purposes, by the name and style of the civil township, town or city corporation respectively, and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction." The provisions of said §5, so far as material here, are as follows: "The common council of each city and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of June, elect three school trustees (who shall hold their office one, two, and three years respectively, as said trustees shall determine by lot at the time of their organization), and, annually thereafter, shall elect one school trustee, who shall hold his office for three years. Said trustees shall constitute the school board of the city or town; * * * All vacancies that may occur in said board of school trustees shall be filled by the common council of the city or board of trustees of the town; but such election to fill a vacancy shall only be for the unexpired term. * * * Said trustees shall receive for their services such compensation as the common council of the city or the board of trustees of the town may deem just; which compensation shall be paid from the special school revenue of the city or town." Although this section is an amendment of an act passed in 1873, yet it is, in reality, a substitute for §5 of said act of March 6, 1865.

The act of March 12, 1875, does not, in terms, apply to cities thereafter created, because it has been held by this court that the month of June referred to in said act relates to the June immediately following the enactment of the

statute.  *Blakemore* v. *Dolan,* 50 Ind. 194.  It is only *ex necessitate* that the statute can be held to apply to towns thereafter created.  In this connection it is important to note that there is no provision of law whereby the inhabitants of suburban lands may incorporate the same as a city. Such inhabitants may create a town, and such town may, if it has the requisite population, become a city.  It cannot be held that the first election provided for by the act of 1875 applies, from the necessity of the case, to cities thereafter created, if it can reasonably be held that the terms of office of the trustees of the school town corporation extend into the period after the city has been created.  This brings us to a consideration of the character of school corporations.

It will be observed that the statute that establishes school corporations provides that they shall be "distinct municipal corporations for school purposes."  The word "distinct," as used in the statute, is used to differentiate the school corporation from the civil corporation, and not to separate school corporations into distinct classes.  *McLaughlin* v. *Shelby Tp.,* 52 Ind. 114; *School Town of Princeton* v. *Gebhart,* 61 Ind. 187; *Utica Tp.* v. *Miller,* 62 Ind. 230; *Braden* v. *Leibenguth,* 126 Ind. 336; *Wilcoxon* v. *City of Bluffton,* 153 Ind. 267.  As said by this court in *McLaughlin* v. *Shelby Tp., supra,* at page 117:  "The language is 'each civil township and each incorporated town or city,' etc., 'is hereby declared a distinct municipal corporation for school purposes,' etc.  Distinct from what?  Clearly from the corporations of the civil townships, towns and cities.  Language could scarcely make it plainer."

As will hereafter appear, progress will be made in the solution of the question before us by considering the character of school corporations in their relation to the State.  The Constitution does not direct the General Assembly to provide for the organization of the common schools, but it directs that body to devise "a *system* of common schools."

Art. 8, §1. The word "system" is thus defined by the Encyclopaedic Dictionary: "A plan or scheme according to which things are connected or combined into a whole; an assemblage of facts, or of principles and conclusions, scientifically arranged or disposed according to certain mutual relations, so as to form a complete whole: as a system of philosophy, a system of government, etc." Section 8 of article 8 of the Constitution directs that: "The General Assembly shall provide for the election, by the voters of the State, of a State Superintendent of Public Instruction, who shall hold his office for two years, and whose duties and compensation shall be prescribed by law." A system of school government in which the cap-sheaf is a state officer, having authority more or less broad, as the legislature may provide, but which, of necessity, reaches down to and affects the schools themselves, is a centralized, and not a localized, form of school government. Judge Cooley, in his great chapter on decentralization, recognizes the distinction between that class of public corporations where the people voluntarily take upon themselves the corporate function, and that class of *quasi* corporations that exist under the general laws of the state apportioning the territory of the state into political divisions for convenience of government, and requiring of the people residing within those divisions the performance of certain public duties as a part of the machinery of the state. Whether the inhabitants, says that learned author, "shall assume those duties or exercise those powers, the people of the political divisions are not allowed the privilege of choice; the legislature assumes this division of the state to be essential in republican government, and the duties are imposed as a part of the proper and necessary burden which the citizens must bear in maintaining and perpetuating constitutional liberty." Cooley's Const. Lim. (5th ed.), 240. The following quotation from the case of *City of Lafayette* v. *Jenners,* 10 Ind. 70, 77, is apropos here: "And we have seen that common schools as

a whole, are made a State institution—a system coextensive with the State, embracing within it every citizen, every foot of territory, and all the taxable property in the State." "Essentially and intrinsically," said this court in *State* v. *Haworth,* 122 Ind. 462, 465, 7 L. R. A. 240, "the schools in which are educated and trained the children who are to become the rulers of the commonwealth are matters of State, and not of local jurisdiction. In such matters the State is a unit, and the legislature the source of power. The authority over schools and school affairs is not necessarily a distributive one to be exercised by local instrumentalities; but, on the contrary, it is a central power, residing in the legislature of the State. It is for the law making power to determine whether the authority shall be exercised by a state board of education, or distributed to county, township, or city organizations throughout the State." We are not called upon in this case to determine all of the consequences that may result from creating two governmental corporations in the same territory. The question before us is a statutory question. We only concern ourselves to apprehend the will of the General Assembly, as it cannot admit of doubt that its power in this matter is plenary. Our purpose in discussing the character of school corporations is to make apparent the fact that they can stand alone; that the destruction of the civil corporation does not work a dissolution of the school corporation because of any necessary interdependence of the two.

As the June referred to in the statute was June, 1875, we must look outside the letter of the statute for our guidance in this case. Are there good reasons for holding that the General Assembly did not intend that the incorporation of the city should vacate the offices of the school trustees? Before the incorporation of the city, the town trustees, in whom the General Assembly has lodged the power of appointment, have performed their duty by appointing school trustees, and why should a change in situation, that

would seem at most to have but lodged the power of appointment elsewhere, have any effect upon the officers of the corporation, so long as there is no occasion for a new appointment? But there are positive reasons why the General Assembly could not have intended to vacate the offices of the school corporation. It has been held that the legislature has manifested its purpose in this and similar statutes to keep experienced men in office, by maintaining a rotation in the expiration of their terms. *Sackett* v. *State, ex rel.,* 74 Ind. 486; *Bell* v. *State, ex rel.,* 129 Ind. 1. As shown, we may escape the effect of the ruling that the date of election is June, 1875, on the ground of necessity, where towns were thereafter incorporated, but there is no such necessity as applied to cities, because it can be held that the school town trustees hold over. It would be contrary to the legislative policy to permit a common council to break into this order by putting three new members into office. It cannot be claimed that the express words of the statute authorize the filling of the offices of school city trustees on the theory that the offices are vacant, because the statute also provides that "such election to fill a vacancy shall only be for the unexpired term."

An even more important reason occurs to us for holding that the General Assembly did not intend to cut off the school town trustees, and that is that under existing legislation there would be an interregnum if the school town trustees did not hold over. When a town has taken the necessary preliminary steps to become a city, and the proposition has received the assent of a majority of the voters, and a certificate thereof has been made and recorded, as provided by statute, the statute declares that such town "shall thereafter be deemed an incorporated city, with the powers and franchises thereof." §3467 Burns 1901, §3036 Horner 1901. By the next section, the town trustees are directed to, within five days, divide the city into wards, and to publish and post a ten days' notice of election. We are not

required to hold in this case that in the civil city there is an absolute interregnum between the recording of the result of the vote to incorporate and the time that the new officers are elected. Indeed, the last section of the statute would seem to afford a fair basis for the position that the town trustees are authorized to maintain a provisional government in the interim, but in the case of a school city there is no such statute, and, as the school city is brought into existence *eo instanti,* the city is incorporated, we can not see how the interruption of the government of the school corporation can be avoided, unless we hold that the terms of office of the school town trustees extend into the period after the city, according to the express words of the statute, has been created, and if we admit that they hold ten days into such period, then we must concede that the incorporation of the city does not cut short their terms of office.

We can think of but one reason that can be advanced why they should not so hold, and that is that the name of the school corporation has changed, for it is thereafter to be known as a school city. But that consideration can furnish but a lame reason for holding that the officers of the school corporation do not continue in office. The old corporation and the new are governmental subdivisions of the State, their boundaries and their people are the same, they are created for the same purpose, they have the same property, and the same obligations, if any, their officers have the same measure of authority, and their bonds run to the same obligee. To contend that the change of the word "town" to "city" creates a new corporation, and thereby vacates the offices of those appointed to administer the corporate affairs, would have as little basis in reason as the claim that a judicial order changing the name of a private corporation would work an amotion of its officers.

It was suggested in argument that if we hold that the school town trustees hold over after the town incorporates as

a city, then we must also hold that, if the citizens of a town voted to abandon its corporate capacity, the school town trustees would hold office under the school township. *Non constat.* This whole matter is a legislative one, and, in the latter case, where we find that the boundary lines of the school town have been obliterated, and where we find that the statute contemplates that but one trustee shall administer the affairs of the school township, we are justified in saying that in such case the General Assembly has manifested a contrary intent.

In holding that the school town trustees hold over when the town becomes a city, it is our judgment that we carry out the policy of the legislative department, in so far as it has been expressed, and it is also our opinion that we are authorized to indulge the presumption that it was the legislative purpose that school town trustees should hold over, because we may presume that it was intended to ac- accomplish the change in the appointing power with the minimum amount of effect upon a corporation that the statute has provided shall be a "distinct municipal corporation for school purposes." "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests. The considerations of evil and hardship may properly exert an influence in giving a construction to a statute when its language is ambiguous or uncertain and doubtful." Sutherland, Stat. Con., §34.

The information alleges that in the month of June, 1900, the mayor and common council of the city of Veedersburg held a meeting "for the purpose of filling the office of school trustee, and thereupon announced and declared, and entered of record, that the defendants [three in number] were elected and appointed as members of said school board, and as the school trustees of said school city, for the terms of one, two, and three years, without fixing or in any way

designating which of the defendants were elected for the term of three years, * * * and said mayor and council have continually refused and still refuse to appoint one trustee, or to make any other appointment than the one so heretofore made." Counsel for appellees insist that, according to the theory of the prayer of the information, the court is called on to determine which one of the defendants is elected, and which two of them should be removed. The theory of a complaint is to be determined by its averments, and not by its prayer. *McGuffey* v. *McClain*, 130 Ind. 327; *Hoosier Slone Co.* v. *Louisville, etc., R. Co.*, 131 Ind. 575. While it may be possible that the three defendants, whom the information alleges have qualified and organized as the school board of said city, may, as against third persons, be regarded as *de facto* trustees, a point that we do not determine, yet we are constrained to hold that, assuming the averments of the information to be true, no one of them was elected, because it can not be determined which one was elected.

Judgment reversed, with instructions to the court below to overrule the demurrer to the information, and for further proceedings not inconsistent with this opinion.