WALTER M. ELSWICK,. Judge.
On the second day of October 1940, while attending, as a pupil, a one-room public school known as the Klipstine school near Big Springs, in Calhoun county, West Virginia, Ernestine Richards, a child then eight years of age, was seriously burned when her clothing caught on fire from an exposed open-blaze gas stove. The stove used was not equipped with any brick, gratings, screens or other protection from the open flame, it appearing from the evidence that the brick or grating had been broken and removed. The defective condition of the stove had *143 been reported by the teacher in charge to both a repairman employed by the board of education of Calhoun county and to the assistant county superintendent of said county some several weeks prior to the time said child was burned, with request that the stove either be repaired or replaced with a new one. (Record pp. 44 and 45). It had not been repaired on the day toe child was burned. There was no supervision of the schoolroom at the time the child was burned, though the injury occurred during school hours.
Ernestine Richards, prior to receiving the burns was a normal child in general good health. (Record pp. 20 and 68). The burns extended from a point midway on her thighs covering the back of her body up to her shoulders and over parts of her arms and legs with an extended strip on the front of her body up to her breast, those from the point midway on her thighs to her shoulders consisting of second and third degree burns. (Record pp. 21 and 36). The burned portions of her back were exhibited to the court. She was treated for burns at St. Joseph’s hospital at Parkersburg, West Virginia, for three months during which time three nurses were required each day to nurse and care for her by succeeding shifts. Later she was removed to a private apartment rented by her father and nursed by two aunts and her mother daily for ten weeks while still receiving treatment for burns by physicians of said St. Joseph’s hospital. She is still required to wear a cotton padding over her burns to which applications of oil are made daily to prevent cracking and crusting. She sustained bums over the kidneys and is now suffering from an abscessed kidney. Her temperature rises abnormally and she is affected by excessive urination and becomes delirious at times. She complains of pains in her side and head and is affected mentally. The burns are of a permanent nature, of which she will not by all probability recover.
J. C. Richards, the father of Ernestine Richards, filed a claim for compensation for the injuries with the court of claims on October 6, 1941, and notice was mailed by the clerk of the court to the state board of education that such claim had been *144 filed; a copy of such notice was mailed to the board of education of Calhoun county, and a copy mailed to the attorney general of the state-of West Virginia. The case was docketed for hearing on January 21, 1942, and evidence adduced by the claimant and state on said date.
The claimant, by counsel, filed a statement or bill of particulars of the claim for hospital bills, medical attention, nursing, compensation for injuries, etc., showing the nature of the claim, which is in the sum of $5000.00. Prom the evidence it appeared that the father had incurred indebtedness for more than $1002.00, exclusive of doctor and hospital bills, and of special care and attention required .by the father and mother and their family. It also appears that the hospital bill amounted to $284.00 and that a bill for her treatment by Dr. Harris amounts to $150.00. The father is an oil and gas worker of modest financial circumstances and has exhausted all of his funds and credit in the care and treatment of said child since said injury.
The attorney general, on behalf of the state, moved to dismiss the claim pn the ground that the state court of claims was without jurisdiction to hear evidence and make recommendations as to the merits of an award in the case on the ground that a state agency was not involved within the meaning of the jurisdiction of the court of claims. We were therefore confronted with the question of interpretation of article 2, chapter 14 of the code as amended by the 1941 acts of the Legislature, pertaining to the purpose and jurisdiction of the court of claims.
Section 1 reads as follows:
“The purpose of this article is to provide a simple and expeditious method for the consideration of claims against the state that because of the provisions of section thirty-five, article six of the constitution of the state and of statutory restrictions, inhibitions or limitations cannot be determined in a court of law or equity; and to provide for proceedings in which the state has a special interest.”
*145 The first subsection of section 13, defining the jurisdiction of the court, states that jurisdiction shall extend to the following matters:
“1. Claims and demands, liquidated and unliqui-dated, ex contractu and ex delicto, against the state or any of its agencies which the state as a sovereign commonwealth should in equity and good conscience discharge and pay.”
It is conceded that this is such a claim that no action can be maintained in a court of law or equity against the board of education of Calhoun county for the reason that it is a part of the educational system of the state established in compliance with article 12, Section 1, of our constitution for the purpose of administering the state system of public education.
“The exemption of the government from liability is based on the theory of sovereignty. The acts of the government were those of the king. In our state, instead of the king being the sovereign, the powers of government reside in all the citizens of the state. The idea was also that certain things worked for the good of the many, and the welfare of the few .¡must be sacrificed in the public interest.” Krutili v. Board of Education of Butler Dist., 99 W. Va. 466, 129 S. E. 486.
In a worthy case the king, however, must have been impressed by the fallacy shown by the petition on which he granted equitable relief in the first instance thereby creating a basis for what we now have, known as equity jurisdiction in the judicial sense.
The free school system which the Legislature is directed to provide by article 12 of the constitution, is a matter of general state concern, and not a municipal or district affair, as much or more so than its highway system. The word “system” itself imports a unity of purpose as well as an entirety of operation, and the direction to the Legislature to “provide, by general law, a thorough and efficient system of free schools” *146 means one system. City of Ardmore v. State, 109 Pac. 563, 26 Okla. 366; Kennedy v. Miller, 97 Cal. 429, 32 Pac. 558.
And the idea of unity of purpose and entirety of operation is emphasized and made more apparent by the term “the free school system of the state” found used in section 9 of article 12 of the constitution.
Webster’s new international dictionary, second edition, defines the word “system” as follows:
“An aggregation or assemblage of objects united by some form of regular interaction or interdependence; a group of divers units so combined by nature or art as to form an integral whole, and to function, operate, or move in unison and, often, in obedience to some form of control; the body considered as a functional unit.”
An excerpt from the opinion in the case of State v. Ogan, 63 N. E. 227, 228, 159 Ind. 119, quoting from City of Lafayette v. Jenners, 10 Ind. 70, 77, is apropos here:
‘And we have seen that common schools, as a whole, are made a state institution, — a system coextensive with the state, embracing within it every citizen, every foot of territory, and all the taxable property of the state.’ ‘Essentially and intrinsically,’ said the court in State v. Haworth, 122 Ind. 462, 465, 23 N. E. 946, 7 L. R. A. 240, ‘the schools in which are educated and trained the children who are to become the rulers of the commonwealth are matters of state, and not of local, jurisdiction. In such matters the state is a unit, and the legislature the source of power. The authority over schools and school affairs is not necessarily a distributive one, to be exercised by local in-strumentalities, but, on the contrary, is a central power, residing in the legislature of the state.’
Section 5 of said article 12, of our constitution, reads as follows:
“The Legislature shall provide for the support of free schools by appropriating thereto the interest of the invested ‘School Fund,’ the net proceeds of all *147 forfeitures and fines accruing to this State under the laws thereof; the State capitation tax, and by general taxation of persons and property or otherwise. It shall also provide for raising in each county or district, by the authority of the people thereof, such a proportion of the amount required for the support of free schools therein as shall be prescribed by general laws.”
This section of the constitution makes it obligatory upon the Legislature to provide for the support of free schools, and it is given plenary, if not absolute, power for this purpose. Kuhn v. Board of Education, 4 W. Va. 499, 508. In this case the court said:
“The establishment of such schools is, therefore, not merely permissive, but obligatory, on the legislature. The system ‘provided for’ by them is required to be ‘thorough and efficient.’ Who is judge of the thoroughness and efficiency? Certainly, the legislature. When the people, through the constitution, delegated that power to the legislature, they made the legislature sole judge of the kind or kinds of free schools that should be established and supported. It was not left to the caprice of an individual, or any number of persons that might be influenced by personal motives or local prejudice, but was wisely confided to the wisdom of the united representatives of the people who, coming from all sections of the State, could best devise a system ‘thorough and efficient.’ . . . From this clause (now section 5) it is plain, the people intended that the ‘thoroughness’ and ‘efficiency’ of the system of free schools, adopted by the legislature, should in no wise be prejudiced by the want of ample means. They, make it obligatory upon the legislature to provide for the support of such schools, not only ‘by appropriating thereto the interest of the invested school fund’ etc., but also by ‘general taxation on persons and property or otherwise,’ thus placing in the hands of the legislature, for that purpose, plenary, if not absolute power.”
While said section 5 of article 12 of the constitution, gives the Legislature such plenary power to provide for the support of free schools by appropriations and also by general taxation *148 on persons and property or otherwise, it is to be. observed, however, that only in the last part of said section, referring to such a proportion of the amount required for the support of free schools to be raised in each county or district, where situate, by authority of the people thereof, is found the qualifying term of expression, applicable only to the counties or districts, “as shall be prescribed by general laws.” Hence it would appear that if compensation is made in the instant case it should be by a direct act of appropriation by the Legislature, since no remedy has been prescribed by general laws to enable county boards to raise funds for such compensation for injuries. See Jarrett v. Goodall, 168 S. E. 763, 113 W. Va. 478; Krutili v. Board of Education, supra.
Under our laws, every person who has a legal or actual charge of a child or children no less than seven nor more than fourteen years of age shall cause such child or children each year to attend a free day school for the full school term of the district or independent district in which such person resides, under penalty of punishment of fine or imprisonment for failure to comply with this provision of law. Code of West Virginia chapter 18, article 8, section 1. Provision is made for adequate means of transportation of all children of school age, at public expense, who reside more than two miles distant from school, and for insurance against negligence of drivers of school busses and other vehicles operated by the board. Can it be said that the responsibility on the part of the state should cease the moment the child enters the schoolroom? There is no question from the evidence, that the stove used in the instant case was unsafe and dangerous for use by small children. The claim in question is one ex delicto against the state which the state as a sovereign commonwealth should in equity and good conscience discharge and pay, as provided for a hearing as to its merits under chapter 14, article 2, section 13 of the code.
The state owes a duty to safeguard and protect the life, health and well-being of a child intrusted to its care by its parent or guardian under the law compelling its attendance *149 as a matter of the welfare of the state. It has plenary power to make appropriation to compensate the injured child while the local board has no such power under existing general laws.
The Legislature has power to make any appropriation to a private person in discharge of a moral obligation of the state, and an appropriation for such purpose is for a public, and not a private, purpose. It is the general doctrine that the Legislature is the sole judge whether a provision by a general law is possible under the provision in the constitution to the effect that no special law shall be enacted, in all cases where a general law can be made applicable. Woodall v. Darst, 71 W. Va. 350, 44 L. R. A. (N. S.) 83, 77 S. E. 264, Ann. Cas. 1914 B, 1278, and authorities cited. In this case the court said:
“We must assume that the legislature considered, whether or not its purpose in making the appropriation to relator could best be accomplished by a general, or by a special, act, and determined in favor of the latter; and, having so determined, the court is not at liberty to say that it abused its discretion, unless it clearly appears from the character of the appropriation that a general law would have answered the purpose as well. This is not clear; there are many matters that might very justly and properly be considered by the legislature in determining the merits of claims of the same general nature as relator’s, which could not well be embodied in a general law. For instance the needs of the claimants and those dependent upon them might very properly influence the legislature in determining the amount it would apply to discharge an obligation purely moral. The most that we can say is, that it is doubtful if a general law would be as proper to accomplish the purpose which the legislature had in view as the special appropriation and we must resolve the doubt in favor of the validity of the act.”
In a recent case of Glover v. Sims, 121 W. Va. 407, 3 S. E. 2nd 612, involving a principle of simple justice and right, our Supreme Court in upholding the constitutionality of appropriation made by the Legislature to pay a printer’s claim against *150 the athletic department of the .stale university as an incidental expense of Ihe department, the court said:
“Emphatically are we impressed that the legislative action of 19157 and 1939 making the appropriations to cover Ihe plaintiff's claim and others against the athletic department of Ihe University, was based on ‘simple .justice and right', because the underlying facts are declaratory of a strong moral obligation of- the state to pay these debts . . . The physical welfare of young mini and women cannot with propriety be ignored. Education is a proper function of state government and includes appropriate physical development as well as mental and moral.”
While constitutional inhibitions prohibit a right of action to be provided for against the state, or against its governmental agencies delegated to perform its governmental duties, appropriations have been made and upheld from time to time, by the Legislature, to persons sustaining injury from the performance of governmental functions by other departments of the stale, where the interests of the state were immediate and direct and justice demanded such action. While 1he same latitude of supervision may not be exercised by the state board of education over the conduct of public schools as is exercised by other state departments, it would seem'that the same right exists, and the same remedy is available, to those injured through negligence of school officials in the performance of the duties of the state toward children attending public schools, as is being awarded to others injured by other state agencies, for similar nonfeasance or malfeasance. Where it would be proper for the Legislature- to make an award in any case, no other exception as to jurisdiction is found under section 13 of the act entitled “The Jurisdiction of the Court” which contains the following specific expression: “The jurisdiction of the board, except for the claims excluded by section fourteen, shall extend, etc.” Certainly such claims of the nature of claimant’s claim were not within the classes of claims excluded from the jurisdiction of the court enumerated in said section fourteen of the act and expressly referred to in said section thirteen.
*151 County boards of education are not made self-sufficient agencies under the system provided for by the constitution and the statutes as is provided for the counties and municipalities. The system of education provided for and intended by the constitution is one co-extensive with the boundaries of the state. It cannot be said that cities and counties were placed in the same category with the system of free schools directed to be provided by the Legislature by the emphasis of article XII of the constitution. Said article is devoted exclusively to the subject of education. While section 6 of article X provides that the credit of the state shall not be granted to, or in aid of any county, city, township, corporation or person, nor shall the state ever assume or become responsible for the debts or liabilities of any county, city, township, corporation or person, no such restriction or limitation is found as 'to the aid or support of the educational system of the state. On the contrary, in the affirmative, we find in section 5 of said article X of the constitution that the power of taxation of the Legislature shall extend to the support of free schools within the state.
In the opinion of a majojrity of the members of the court, this claim is one coming within subsection 1 of said section 13 of the act, not specifically excluded by section 14 of the act, against the state, which, as is expressed by said section 13 of the act, the state as a sovereign commonwealth should in equity and good conscience discharge and pay. The evidence fully justifies an award for the full sum of five thousand dollars ($5000.00) sought by claimant and an award for said amount is recommended by a majority vote.
Judge Schuck dissents and files a statement of his views.