**Ruth E. ALBRO, Rosemary Adams, et al., Appellants,**

v.

**INDIANAPOLIS EDUCATION ASSOCIATION, Appellee.**

**No. 29A02–9007–CV–00383.**

Court of Appeals of Indiana, Second District.

Jan. 30, 1992.

Rehearing Denied April 7, 1992.

Milton L. Chappell, Nat. Right to Work Legal Defense Foundation, Springfield, Va., Stephen C. Cline, Jan J. Kinzie, Cline Owen & Kinzie, Indianapolis, for appellants.

Richard J. Darko, Mary Jane Lapointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

SHIELDS, Judge.

Nonunion teachers (Teachers) employed by the Indianapolis Public School System appeal the grant of summary judgment in favor of the Indianapolis Education Association (IEA) in its actions against non-union teachers who failed to pay fair share fees for the 1986–87 and 1987–88 contract years.

We reverse and remand for further proceedings.

## ISSUE

The issue on appeal is the appropriate methodology to determine "fair share" fees. In addition, because the question may arise on remand, we examine certain factors that may be considered in making the fair share fee determination.[1]

## FACTS

The collective bargaining agreements between IEA and the Board of School Commissioners of the City of Indianapolis for the 1986–87 and 1987–88 school years contained an "agency shop" provision. This provision recognized IEA as the sole bargaining unit representative and required Teachers, as non IEA members of the collective bargaining unit, to pay a "fair share" fee to IEA for expenses it incurred as the exclusive bargaining unit representative.

In the Fall of 1986 and 1987, IEA provided particulars on its union expenses for each contract year to members of the bargaining unit who had failed to voluntarily pay the fair share fees as determined by IEA. The parties then engaged in nonbinding arbitration which determined the fair share fee for the 1986–87 school year at $297.29 and the 1987–88 school year fair share fee at $304.72.

IEA initiated legal proceedings against members of the bargaining unit who, after notice, refused to pay the arbitration-determined fair share fee for the respective contract years. The trial courts granted IEA's

---

1. IEA suggests we should not consider the merits of this appeal because Teachers' Appellants' Brief fails to comply with the Indiana Rules of Appellate Procedure. Specifically, IEA claims Teachers' Statement of the Case is inappropriate and their brief fails to include a verbatim statement of the judgment, violates the intent of the fifty-page limitation by inappropriate use of footnotes, and fails to cite appropriate authority. None of the alleged defects are so substantial as to hinder our ability to consider the issue presented. Therefore, we reach the merits of Teachers' appeal. *See Lambert v. Farmers Bank* (1988), Ind.App., 519 N.E.2d 745, 747.

motions for summary judgment and awarded IEA the fair share fees as determined in the arbitration plus interest and costs.

## DISCUSSION AND DECISION

We employ the same standard as the trial court in reviewing the grant of summary judgment: we determine whether the moving party established both the lack of a genuine issue of material fact and the party's entitlement to judgment as a matter of law. *Rogers v. Lewton* (1991), Ind.App., 570 N.E.2d 133, 134. As a general rule, the focus of our review of the grant of summary judgment is whether a genuine issue of material fact exists because the applicable law is well-settled. Here, however, the focus is on the law, i.e., what is the "lawful" methodology to prove a nonunion member's fair share fee and can particular expenses be used in the calculation.

The Supreme Court has addressed the tension between union security provisions, such as the agency shop provisions in the two contracts in this case, and the first amendment rights of the members of the collective bargaining unit who do not wish to join the union but must provide financial support to the union as a condition of employment. Although the Court has upheld such provisions against constitutional attacks, *see, e.g., Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261, the Court has limited the manner by which the union can collect financial support from the nonunion members, *see, e.g., Chicago Teachers Union Local, No. 1 v. Hudson* (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232, and has limited the union activities for which nonunion members can be forced to provide financial support. *See, e.g., Lehnert v. Ferris Faculty Association* (1991), —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572. These limits were framed to protect the first amendment rights of members of the bargaining unit who do not wish to belong to or support the union.

### I.

Teachers assert error in that IEA documented only nonchargeable expenses in proving the ratio of chargeable to total expenses.[2]

▮ Teachers and IEA agree the IEA has the burden of proving the ratio of chargeable expenses to total expenses.[3] Once this ratio is established, the ratio, expressed as a percentage, is multiplied by the amount of a member's dues to determine a nonmember's fair share. Teachers also recognize this court has held a union can meet its burden of proving the proportion of chargeable expenses to total expenses by proving the amount of nonchargeable expenses. *See Fort Wayne Education Association, Inc. v. Aldrich* (1992), Ind.App., 585 N.E.2d 6; *Cheeseman v. Jay School Corp. Classroom Teachers Association, Inc.* (1988), Ind.App., 527

2. IEA asserts Teachers' claim that IEA established its chargeable expenses by proving nonchargeable expenditures is incorrect. In making this assertion, IEA apparently is referring to affidavits in support of its motions for summary judgment which provide an analysis of expenditures broken into chargeable and nonchargeable amounts. For example, IEA claims "ISTA expenditures were verified by the Affidavits of Doyle McAllister, which were submitted to the trial courts." Supplemental Brief of Appellee at 8. The Statement of Operations attached to the affidavits contains a listing of expenditures in each ISTA department, the structure, operation, and activities of each department, and a statement of chargeable and nonchargeable expenses. However, the record also establishes that the determination of the chargeable versus the nonchargeable expenses results from a survey in which the surveyed party is asked to set forth the nonchargeable activities. For example, the 1985–86 Report by Staff on Activities Which Cannot be Charged to the Fair Share Fee Payer asks for time spent and amounts expended on only nonchargeable activities. *See e.g.,* Record at 362 (*Albro* Exhibit). Therefore, we construe IEA's statement that it proved chargeable expenditures as an assertion that while it proved chargeable expenditures it did so by proving its nonchargeable expenditures and not as an assertion that it proved its chargeable expenses by determining only chargeable items. The record readily establishes that IEA determined chargeable items by subtracting nonchargeable expenses from the total expenses.

3. *See Lehnert v. Ferris Faculty Association* (1991), —— U.S. ——, ——, 111 S.Ct. 1950, 1962, 114 L.Ed.2d 572 ("The union bears the burden of proving the proportion of chargeable expenses to total expenses.").

N.E.2d 715, 719; *Abels v. Monroe County Education Association* (1986), Ind.App., 489 N.E.2d 533, 539, *cert. denied*, (1987), 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518; *New Prairie Classroom Teachers Association v. Stewart* (1986), Ind.App., 487 N.E.2d 1324, 1328, *cert. denied*, (1987), 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686. However, Teachers assert the United States Supreme Court has implicitly overruled these cases by holding the ratio can be established only by affirmatively proving the chargeable expenses or, alternatively, argue this court should reconsider its earlier decisions.

Careful consideration of the issue compels us to conclude this court erred in previously approving the methodology used by IEA in these cases. In the past, we failed to recognize the methodology inappropriately shifted the burden of proof from the union to the objecting Teachers. We now hold that a union does not meet its burden of proving the ratio of chargeable expenses to total expenses by a methodology that merely proves nonchargeable expenses. Consequently, although the trial courts granted summary judgments based upon existing law, we hold the trial courts erred in granting IEA summary judgment.

Three considerations guide our decision that existing law should not be followed. The most important consideration is the previously approved methodology of allowing a union to meet its burden to prove the proportion of chargeable expenses to total expenses by establishing the amount of nonchargeable expenses effectively shifts the burden of proof onto the nonunion members of the bargaining unit. Once the union proves the amount of the expenses it cannot charge to the nonunion members, the remaining expenses are presumed to be chargeable, and the nonunion members must endeavor to establish that the presumption is invalid. This burden-shifting problem is illuminated by the United States District Court for the Western District of Michigan in *Lehnert v. Ferris Faculty Association:*

It is not a truism, as the union … would suggest, that an admission of nonchargeable activity and time estimates is, by implication, competent proof of chargeable activity and time. As the [Supreme Court has] explained, the first amendment requires that the union adequately disclose the nature of the activities for which it seeks to charge the objecting service fee payor. Since the burden of persuasion on the issue of the percentage of chargeable expenditures remains always with the union, and since the union possesses the facts and records from which this percentage is to be calculated, the union cannot shift the burden to the [nonunion members] to cull through the unidentified but assumed chargeable activities in search of discrepancies.

(1986), W.D.Mich., 643 F.Supp. 1306, 1327, *aff'd*, (1989), 6th Cir., 881 F.2d 1388, *aff'd in part, rev'd in part*, (1991), ——— U.S. ———, 111 S.Ct. 1950, 114 L.Ed.2d 572 (citations omitted).[4]

Second, allowing a union to prove only the nonchargeable expenses is inconsistent with Supreme Court case law dealing with fair share determinations in other settings. In *Chicago Teachers Union, Local No. 1 v. Hudson* (1986), 475 U.S. 292, 306–07, 106 S.Ct. 1066, 1075–76, 89 L.Ed.2d 232, the Supreme Court held that where the fair share is deducted automatically from nonunion members' paychecks, the union must provide the nonunion members with sufficient notice of the basis for the fair share so the nonunion members can decide whether they wish to challenge the union's determination. The Court held that, for notice purposes, a union cannot merely identify the amount it admittedly spent for purposes that did not benefit the nonmembers, i.e., nonchargeable expenses. *Id.* Instead, according to the Court, the union must affirmatively identify the expenditures for collective bargaining and contract administration for which nonmembers could be charged a fee, i.e., chargeable

---

**4.** In the time between the District Court's decision and the appeal to the Circuit Court, the parties reached a partial settlement. As a result, the appeal did not involve the issue for which we cite the District Court's decision.

expenses. *Id.* It is only logical that if identifying the nonchargeable expenses is insufficient for notice purposes it is also insufficient to meet the burden of *proving* the fair share fee at trial.

Third, in *Lehnert v. Ferris Faculty Association* (1991), —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (discussed *infra* at II.), the Supreme Court distilled a standard from its prior fair share decisions for determining whether union expenses can be included in the fair share calculation. The paramount consideration in the standard is whether the particular expense can be proved to be *chargeable*. This consideration would be frustrated if a union were permitted to meet its burden of proving chargeable expenses only through proof of nonchargeable expenses; it would obfuscate analyzing the fair share issue through the standard.[5]

However, we continue to recognize that absolute precision will not be expected or required in the calculation of the charge to nonmembers. We continue to agree with our statement in *New Prairie Classroom Teachers Association v. Stewart* (1986), Ind.App., 487 N.E.2d 1324, 1328: "It is true that the bargaining representative has the burden of proving the proportion of its funds which are expended for [nonchargeable] purposes, but absolute precision is not expected or required." The only difference is that now the absolute precision is not expected or required in proving the affirmative, i.e., the chargeable expenses, rather than in proving the negative, i.e., the nonchargeable expenses. Similarly, this court continues to hold that imposing a heightened standard of proof, such as clear and convincing evidence as opposed to the existing standard of preponderance of the evidence, is inappropriate. As stated in *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks* (1984), 466 U.S. 435, 457, n. 15, 104 S.Ct. 1883, 1897, n. 15, 80 L.Ed.2d 428: "The fact that petitioners invoke the First Amendment is insufficient reason to impose the heightened standard on their opponents, and we perceive no need to abandon the preponderance standard normally applicable in civil suit for damages."

In summary, we hold a union cannot meet its burden of proving a nonunion member's fair share fee by a formula that subtracts nonchargeable expenses from the union's total expenses. Chargeable expenses must be affirmatively proven. Therefore, because IEA did not affirmatively prove its chargeable expenses, IEA is not entitled to the summary judgments it received.

## II.

Although reversal in this case is necessary because IEA failed to properly prove the ratio of its chargeable to total expenses, we also consider Teachers' challenge to the grant of summary judgments based upon disputes concerning factors which the IEA may consider in determining the fair share fee because the issue will arise on remand.

Teachers argue that under the recent Supreme Court decision in *Lehnert v. Ferris Faculty Association* (1991), —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572, certain union expenses were improperly included among the chargeable expenses. Specifically, Teachers argue the fair share fees awarded IEA in the instant cases include IEA's expenditures for: lobbying, electoral politics, public relations activities,

---

5. We also find language IEA used in a portion of its Supplemental Brief of Appellee instructive on the necessity for having the union prove its chargeable expenses and not merely its nonchargeable expenses. In discussing whether under *Lehnert* a certain type of expense is chargeable, IEA states, "[T]rial courts must look at the exact nature of the challenged activities, rather than the label put on those activities." Supplemental Brief of Appellee at 19. Allowing a union to meet its burden by proving the amount of its expenses it admits are nonchargeable is tantamount to allowing the union to simply "label" the remainder of its expenses chargeable and forcing the nonunion members to prove otherwise. Following IEA's own language, we feel a better process for proving the chargeable expenses is to look at the exact nature of the expenses and evaluate whether that expense can be charged by using the three-prong *Lehnert* standard and requiring the union to bear the burden of proving the chargeability of all challenged expenses or activities.

litigation not specifically on behalf of Teachers' bargaining unit, charitable donations, organizing activities, members-only benefits, and other activities that are wholly unrelated to Teachers' bargaining unit and would not ultimately enure to its benefit.

In response, IEA argues that *Lehnert* announces a new rule and, therefore, should not be applied retroactively to this case. Alternatively, IEA argues further that if *Lehnert* is applicable, aspects of Teachers' argument are based on misinterpretations of the Court's decision, although it acknowledges certain union expenses that are not chargeable to nonunion members under *Lehnert* were included in the instant fair share calculations.

Accepting the proposition that the Court's decision in *Lehnert* announces a new rule, another Supreme Court decision, *James B. Beam Distilling Co. v. Georgia* (1991), —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481, compels the conclusion that *Lehnert* is applicable to this consolidated case. In *Beam* the Court held a new rule applied in the case announcing the rule is to be applied retroactively to all pending cases. 111 S.Ct. at 2448. The Court held further that "selective proactivity," i.e., applying the new rule to the case at hand, but not to other cases pending at the time the new rule is announced—the approach IEA argues for in this case—has no application in the civil context. *Id.* at 2245–48. Therefore, we reject IEA's argument that the Court's decision in *Lehnert* should not be applied to this case.

■ In *Lehnert,* the Supreme Court distilled from its prior decisions three guidelines for determining on a case-by-case basis what expenses a union may charge nonunion members without impinging upon the nonunion members' first amendment rights. *See* 111 S.Ct. at 1959. First, union expenses must be for activities that are "germane" to collective bargaining. *Id.* Second, the expenses must be for activities that are justified by the government's vital policy interest in labor peace and avoiding "free riders." *Id.* Third, the expenses must be for activities that do not signifi-

cantly add to the burdening of free speech that is inherent in allowing an agency or union shop. *Id.* Justice Blackmun, speaking for the majority of the Court, held that under this three-part test, the local bargaining unit representative can charge nonunion members for their pro-rata share of: the costs associated with otherwise chargeable activities of its state and national associates, even if the activities were not performed for the direct benefit of the objecting employees' bargaining unit, so long as there is some indication the expenses were incurred for services that may ultimately enure to the benefit of the local bargaining unit members (*id.* at 1961–62); expenses incurred for the portions of a union publication that deal with teaching and education generally, professional development, unemployment, job opportunities, award programs, and other miscellaneous matters (*id.* at 1964); and expenses incurred by subsidizing participation by union delegates in national conventions (*id.* at 1964–65).

Justice Blackmun, writing for a plurality of the Court and announcing the Court's judgment, also determined that under the Court's three-part standard, nonunion members *cannot* be charged for: expenses incurred by the union for lobbying, electoral, and other political activities that do not relate to the bargaining unit's collective bargaining agreement (*id.* at 1959–61); expenses incurred in relation to a program in which the union sought to affect ballot issues pertaining to local taxes which finance public schools and the expenses incurred in publishing information concerning these activities (*id.* at 1963); expenses for litigation not related to the local unit (*id.* at 1963–64); and certain public relations expenses (*id.* at 1964).

### 1. Lobbying Expenses.

■ IEA does not challenge Teachers' argument that under *Lehnert* expenses for lobbying not relating to the bargaining unit's collective bargaining agreement are not chargeable to the nonunion members and that such lobbying expenses were unlawfully included in the determination of the ratio of chargeable to total expenses. Supplemental Brief of Appellee at 14–15.

In any event, we find the Supreme Court's plurality decision that lobbying expenses unrelated to the unit's collective bargaining agreement do not survive the Court's three-prong chargeability standard is persuasive and adopt that standard. Thus, on remand, any lobbying expenses unrelated to the bargaining unit's collective bargaining agreement are not chargeable expenses.

### 2. Political and Charitable Expenses.

■ IEA also concedes its electoral politics and ballot proposition expenses and its charitable contributions are not chargeable under *Lehnert.* Supplemental Brief of Appellee at 16–18. However, IEA argues that all such expenses were excluded from the fair share determination, except for a few "isolated references to political action committees in news letters and board minutes," *id.* at 17, and "isolated references to charitable contributions ... contained in the documents submitted to the trial courts." *Id.* at 25. IEA states "[T]hese references are *de minimis,"* *id.* at 17, 25, and argues that footnote *dictum* in *Chicago Teachers Union, Local No. 1 v. Hudson* (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232, allows unions to charge nonunion members for *de minimis* nonchargeable expenses. The Court has stated in *dictum* that there are practical reasons why absolute precision in calculating the chargeable expenses cannot be expected or required, and "thus, ... the union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year." *Id.,* 106 S.Ct. at 1076, n. 18. However, this *dictum* does not support IEA's argument that nonchargeable expenses may be charged to nonunion members merely because the expenses are relatively small. We acknowledge the cost of proving the precise amount of a chargeable expense could be greater than the expense itself, and for that reason a union

should be afforded some leeway. However, that does not mean a union should be allowed to charge nonunion members for an expense it admits is for a nonchargeable activity, merely because the expense is *de minimis.*[6] In fact, in *Hudson* the Court stressed the fact that a nonchargeable expense is small has no effect on the union's inability to pass the expense onto dissenting members of a bargaining unit:

> [W]hatever the amount, the quality of respondents' interest in not being compelled to subsidize the propagation of political or ideological views they oppose is clear. In [the past], we emphasized this point by quoting the comments of Thomas Jefferson and James Madison about the tyrannical character of forcing an individual to contribute even "three pence" for the "propagation of opinions which he disbelieves."

475 U.S. at 305, 106 S.Ct. at 1075.

Therefore, on remand, no political expenses or charitable contributions, even if the expenses are *de minimis,* are chargeable.

### 3. Public Relations Expenses.

■ In *Lehnert,* Justice Blackmun, writing for the plurality stated,

> Like the challenged lobbying conduct, the public-relations activities at issue here entailed speech of a political nature in a public forum. More important, public speech in support of the teaching profession generally is not sufficiently related to the union's collective-bargaining functions to justify compelling dissenting employees to support it. Expression of this kind extends beyond the negotiation and grievance-resolution contexts and imposes a substantially greater burden upon First Amendment rights than do the latter activities.

---

**6.** The only union dues case decided by the Court in which *de minimis* expenses are discussed is *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks* (1984) 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428. In *Ellis,* a case involving the Railway Labor Act, the court found certain *de minimis* expenses to be chargeable because they were "sufficiently related to [collective bar-

gaining] to be charged to all employees." *Id.* at 449–50, 104 S.Ct. at 1892–93. Thus, those expenses in *Ellis,* which were termed *de minimis,* were properly charged to the dissenters because they were for chargeable activities (collective bargaining), *not* merely because the expenses were *de minimis.*

111 S.Ct. at 1964. IEA argues that although it cannot charge Teachers for "external" public relations expenses, it can charge Teachers for what it terms "internal" public relations expenses. IEA's attempt to distinguish between "internal" and "external" public relations expenses is unsuccessful except to the extent it distinguishes between speech activities that are directed to those within the bargaining unit and speech activities that are directed to the public at large. However, we fail to see how speech activities can be termed *public* relations activities unless they are directed to the public at large. Hence, at this time, we adopt the *Lehnert* plurality's analysis regarding the chargeability of public relations expenses without recognizing IEA's distinction between external and internal public relations expenses. We leave the viability of IEA's attempt to distinguish between internal and external public relations for the parties to explore upon remand.

### 4. Expenses for Extra–Unit Litigation.

■ Teachers argue that under *Lehnert* IEA cannot charge them for expenses incurred by IEA's state and national affiliates for litigation that is not performed on behalf of the Teachers' bargaining unit. In *Lehnert*, Justice Blackmun, writing for the plurality, stated, "When unrelated to an objecting employee's unit, ... [litigation is] not germane to the union's duties as exclusive bargaining representative. [W]e hold that the [First] Amendment proscribes such assessments in the public sector." *Id.*

IEA responds with the argument that Justice Scalia's opinion dissenting in part and concurring in part, is the Court's opinion, and under Scalia's analysis, extra-unit litigation expenses are chargeable to nonunion members.

Justice Scalia's concurring and dissenting opinion neither constitutes the opinion of the Court on this issue nor allows nonunion members to be charged for extra-unit litigation. In any event, again the analysis in Justice Blackmun's plurality opinion is persuasive. We adopt that opinion, and the judgment of the Court in *Lehnert,* and hold that extra-unit litigation expenses are *not* chargeable fair share fee expenses.

### 5. Organizing Expenses.

■ IEA admits it cannot charge Teachers for what it terms "offensive" organization expenses (i.e., new member recruitment) but claims it can charge Teachers for "defensive" organization (i.e. member retention expenses). It argues the issue of whether organization expenses are chargeable expenses is controlled by the Court's decision in *Ellis*. According to IEA, the *Ellis* decision holds only that money spent on organizing people who are *not* union members (i.e. "offensive" organization under IEA's terminology) cannot be charged to nonunion members, and, therefore, *Ellis* implicitly holds that money spent on retaining members can be charged to nonunion members.

The chargeability of so called "defensive" organizing expenses was not an issue in *Ellis*. Furthermore, organizing expenses, like all expenses that a union seeks to impose upon the nonunion members of the bargaining unit, must survive the three part chargeability standard articulated by the Court in *Lehnert.* "Defensive" organizing expenses are *not* chargeable under the *Lehnert* standard; they cannot survive the second and third prongs of the *Lehnert* standard. There is no "free-rider" problem associated with "defensive" organizing. The nonunion member does not receive any benefit or satisfaction from having the union incur expenses to retain its members. And charging a nonunion member for activities the union undertakes to convince its members to remain part of the union adds significantly to the burden of free speech associated with the agency shop. A member of the bargaining unit who does not wish to join the union would not want to bankroll the union's efforts to convince its members to remain in the union.

On remand, IEA may not charge Teachers for any expense incurred in either "offensive" or "defensive" organizing activities.

### 6. Expenses for Members Only Benefits.

■ IEA cannot charge Teachers for any of its expenses incurred in providing bene-

fits only to union members. These activities neither represent a "free rider" problem nor are they "germane" to collective bargaining.

7. State & National Affiliates Expenses.

■ Teachers admit that under *Lehnert* IEA may charge them for some of the expenses incurred due to IEA's affiliation with state and national unions. IEA argues that because Teachers admit IEA can charge for affiliate expenses, *all* affiliation expenses are chargeable on remand. However, Teachers' admission and the Court in *Lehnert* do not go so far.

Teachers claim IEA cannot charge them for activities performed by the affiliates that do not meet the three part chargeability standard or for activities that are otherwise chargeable but for which there is no ultimate benefit that enures to the members of Teachers' bargaining unit.

The Court addresses the issue in *Lehnert* as follows:

> [A] local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit.... [However,] there must be some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization.

*Lehnert*, 111 S.Ct. at 1962–63. Hence, on remand IEA may charge Teachers only for those expenses incurred for activities it can prove are otherwise chargeable which have some indication they may ultimately enure a benefit to the members of the local union.

Judgments reversed and remanded for further proceedings consistent with this decision.

BUCHANAN and SULLIVAN, JJ., concur.