Barbara **FLOSENZIER** and Patricia Setnor; Kent Adams; Robert Miller and Lori Overmyer, Appellants–Defendants,

v.

**JOHN GLENN EDUCATION ASSOCIATION**, Mishawaka Education Association, and Penn–Harris–Madison Teachers Association, Appellees–Plaintiffs.

No. 71A05–9501–CV–16.

Court of Appeals of Indiana.

Oct. 24, 1995.

William F. Diehl, Indianapolis, Milton L. Chappell, Springfield, VA, for appellants.

Richard J. Darko, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellees.

## OPINION

RILEY, Judge.

Defendants–Appellants nonunion teachers (Teachers) employed by three public school corporations appeal from a summary judgment in favor of the John Glenn Education Association, the Mishawaka Education Association, and the Penn–Harris–Madison Teachers Association (collectively referred to as "Associations") in an action against the Teachers for failing to pay their fair share fees for the 1992–93 contract year.[1]

We affirm.

### ISSUES

The Teachers present the following consolidated and restated issues for our review:

1. Is the evidence submitted by the Associations adequate to support the trial court's grant of summary judgment in light of our decision in *Albro v. Indianapolis Educ. Assoc.* (1992), Ind.App., 585 N.E.2d 666, *aff'd and adopted by Fort Wayne Educ. Assoc. v. Aldrich* (1992), Ind., 594 N.E.2d 781, *reh'g denied?*

2. Did the Teachers affirmatively set forth specific facts establishing the existence of genuine issues in dispute?

### FACTS [2]

The John Glenn Education Association is the exclusive bargaining representative of

---

1. The Associations filed this action against eight Teachers; however, prior to the trial court's decision, three Teachers were dismissed from the action. The remaining Teachers are the appellants herein: Barbara Flosenzier, Patricia Set-nor, Kent Adams, Robert Miller, and Lori Overmyer.

2. At the outset, we note that the Teachers failed to comply with various aspects of Ind.Appellate

the certificated school employees of the Board of School Trustees of the John Glenn School Corporation. The Mishawaka Education Association is the exclusive bargaining representative of the certificated school employees of the Board of School Trustees of the School City of Mishawaka. The Penn–Harris–Madison Teachers Association is the exclusive bargaining representative of the certificated school employees of the Board of School Trustees of the Penn–Harris–Madison Corporation. *See* IND.CODE 20–7.5–1–1 (1993) *et seq.* The Associations entered into collective bargaining agreements with their respective school boards covering the 1992–93 school year. Each collective bargaining agreement contains a provision that requires the members of the bargaining unit represented by an association or union, who do not become members of the union, to pay a fair share fee to the union and its affiliated organizations, the Indiana State Teachers Associations (ISTA) and the National Education Association (NEA) for services rendered and expenses for collective bargaining, contract administration, grievance adjustment, and other costs related to its duties as exclusive bargaining representative.[3]

In the fall of 1992, the Associations provided particulars on union expenses for the contract year to nonunion members of the bargaining units showing the Associations' expenditures and explaining which expenditures it believed were properly charged as part of the fair share fee. ISTA then engaged in non-binding arbitration under the auspices of the American Arbitration Associ-

ation (AAA) which determined the fair share fee for the 1992–93 school year at $363.84 for the John Glenn Education Association, $381.45 for the Mishawaka Education Association, and $379.43 for the Penn–Harris–Madison Teachers Association.[4]

The Associations initiated legal proceedings against nonunion members of the bargaining units who, after notice, refused to pay the 1992–93 fair share fee. The Associations moved for summary judgment which the trial court granted, awarding the Associations the fair share fees as determined by the AAA.

The Teachers appeal.

## DISCUSSION
### Standard

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Kerr v. Carlos* (1991), Ind.App., 582 N.E.2d 860, 863. When reviewing a grant of summary judgment, we face the same issues as the trial court and carefully scrutinize the trial court's determination to ensure that the nonprevailing party is not improperly prevented from having his day in court. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. "On appeal, a trial court's grant of summary judgment is 'clothed with a presumption of validity.' The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Rosi v. Business Furniture*

Rule 8.3. The Teachers did not include a verbatim statement of the entire memorandum decision of the trial court. The statement of the case is not wholly objective and the statement of facts focuses upon the evidence favorable to the Teachers' position in an effort to attack the evidence most favorable to the judgment. The statement of facts shall be a concise narrative of the facts supported by references to the record, stated in a light most favorable to the judgment, and shall not be argumentative. *Lowry v. Lowry* (1992), Ind.App., 590 N.E.2d 612, 623 n. 1, *reh'g denied*. Rather than order rebriefing, we shall address the merits.

3. Senate Enrolled Act 5, P.L. 199, Acts of 1995, prohibits fair share provisions in contracts bargained after July 1, 1995, and thus does not apply to the facts of this case.

4. The Associations are required to follow certain procedures in collecting the fair share fees to ensure that the non-members are given adequate advance notice of the amount of the fee sought and the opportunity to object to the fee. *Chicago Teachers Union v. Hudson* (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232; *Cheeseman v. Jay School Corp. Classroom Teachers Assoc.* (1988), Ind.App., 527 N.E.2d 715, *reh'g denied* (1989), *overruled in part by Albro*, 585 N.E.2d 666. In Indiana, AAA conducts arbitration because no administrative agency has jurisdiction to conduct a fair share hearing. *Fort Wayne Educ. Assoc. v. Aldrich* (1988), Ind.App., 527 N.E.2d 201, 217; *see also Ping v. National Educ. Assoc.* (1989), 7th Cir., 870 F.2d 1369 (procedures used by ISTA explicitly approved).

*Corp.* (1993), Ind., 615 N.E.2d 431, 434. We liberally construe all inferences and resolve all doubts in the nonmovant's favor. *Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378, 1381, *trans. denied.* Despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper when there is no dispute regarding facts that are dispositive of the litigation. *Murphy v. Mellon Accountants Professional Corp.* (1989), Ind.App., 538 N.E.2d 968, 969, *reh'g denied, trans. denied.*

The present case does not involve disputed material facts; rather, it stems primarily from conflicting interpretations of recent case law, specifically, the methodology for proving the fair share fee in light of *Albro v. Indianapolis Educ. Assoc.* (1992), Ind.App., 585 N.E.2d 666, *aff'd and adopted by Fort Wayne Educ. Assoc. v. Aldrich* (1992), Ind., 594 N.E.2d 781, *reh'g denied.* Thus, our focus is on the second part of the summary judgment test, whether the moving party is entitled to judgment as a matter of law.

## I.

■ The "agency shop" provision and requirement for payment of a fair share fee contained in the contracts between the Teachers and their respective Association is valid and enforceable through collection proceedings such as the present action. *See Abood v. Detroit Bd. Of Educ.* (1977), 431 U.S. 209, 215, 97 S.Ct. 1782, 1789, 52 L.Ed.2d 261. In such an action, the union has the burden of proving the amount of the fair share fee, and it does so by establishing the ratio of chargeable expenses to total expenses. *Albro,* 585 N.E.2d at 668. Once established, the ratio, expressed as a percentage, is multiplied by the amount of a union member's dues to determine a non-union member's fair share fee. *Abood,* 431 U.S. at 215, 97 S.Ct. at 1789. Prior to *Albro,* a union could prove the amount of a fair share fee by a formula that subtracted its noncharageable expenses from its total expenses. *See Fort Wayne Educ. Assoc. v.*

*Aldrich* (1992), Ind.App., 585 N.E.2d 6, 9, *vacated,* (1992), Ind., 594 N.E.2d 781, *reh'g denied; Cheeseman,* 527 N.E.2d at 719; *Abels v. Monroe County Educ. Assoc.* (1986), Ind.App., 489 N.E.2d 533, 539, *reh'g denied, trans. denied, cert. denied,* (1987), 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518, *overruled in part by Albro,* 585 N.E.2d 666; *New Prairie Classroom Teachers Assoc. v. Stewart* (1986), Ind.App., 487 N.E.2d 1324, 1328, *reh'g denied, trans. denied, cert. denied,* (1987), 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686. However, in *Albro,* Judge Shields changed this formulation, holding that chargeable expenses must be proven affirmatively. *Albro,* 585 N.E.2d at 670; *see Chicago Teachers Union v. Hudson* (1986), 475 U.S. 292, 306–07, 106 S.Ct. 1066, 1076, 89 L.Ed.2d 232.

In the present case, the Teachers contend that *Albro* not only changed the formula by which a union arrives at a fair share fee but also the quantity and nature of the proof that a union is required to produce. Indeed, the Teachers suggest that the *Albro* requirement of affirmative proof prohibits a court from granting summary judgment in favor of a union in fair share fee collection cases. *See* Appellant's Brief at 7. They do this relying mainly upon two footnotes from that case.

The Teachers argue:

Analogous to the affidavits and exhibits filed in *Albro,* the affidavits and exhibits filed herein contain "a list of expenditures of each ISTA department, the structure, operation, and activities of each department, and a statement of chargeable and nonchargeable expenses." *Id.* at 668 n. 2. However, this court specifically held that the mere listing of chargeable and nonchargeable activities and expenses does not meet the unions' burden of proving their chargeable expenses. *Id.*

Appellant's Brief at 14 (citations in original).[5] Initially, we note that specific holdings are

5. Footnote 2 states:
[The union] asserts [the] Teachers' claim that [the union] established its chargeable expenses by proving nonchargeable expenditures is incorrect. In making this assertion, [the union] apparently is referring to affidavits in support of its motions for summary judgment which provide an analysis of expenditures broken into chargeable and nonchargeable amounts. For example, [the union] claims "ISTA expenditures were verified by the Affidavits of Doyle McAllister, which were submitted to the trial courts." The Statement of Operations attached to the affidavits contains a listing of expenditures in each ISTA department, the structure, operation, and activities of each de-

rarely found in footnotes. More significantly, in Footnote 2 Judge Shields was concerned with the methodology of proving chargeable expenses, differentiating between the previously accepted method of subtracting nonchargeable expenses from total expenses to arrive at the chargeable expenses, and the proposed method of affirmatively proving chargeable expenses. She was not commenting on the sufficiency of the unions' documentation to prove chargeable expenses.

The Teachers also rely on *Albro*'s Footnote 5 which they assert demands that unions produce more evidence of an exact nature to prove that fair share fees are based solely on chargeable union expenses. The Teachers characterize the evidence produced in this case as "twenty-two summary documents and seven self-serving and conclusory affidavits" and seek instead that the Associations prove their chargeable expenses using "the actual, documentary, best evidence and other proof of the exact nature of the unions activities and expenses." Appellant's Brief at 1. The argument goes on to suggest that in order for a union to meet its prima facie burden of proof it would need to produce all the time and expense reports created by its employees during a contract year, and possibly require that all union-staff employees testify at trial.[6] Apparently, while depend-

ing upon the language of two footnotes, Teachers have overlooked the body of the *Albro* decision which states, in relevant part:

we continue to recognize that absolute precision will not be expected or required in the calculation of the charge to nonmembers. We continue to agree with our statement in *New Prairie Classroom Teachers Assoc.[ ] v. Stewart* (1986), Ind.App., 487 N.E.2d 1324, 1328: "It is true that the bargaining representative has the burden of proving the proportion of its funds which are expended for [nonchargeable] purposes, but absolute precision is not expected or required." The only difference is that now the absolute precision is not expected or required in proving the affirmative, i.e., the chargeable expenses, rather than in proving the negative, i.e., the nonchargeable expenses. Similarly, this court continues to hold that imposing a heightened standard of proof, such as clear and convincing evidence as opposed to the existing standard of preponderance of the evidence, is inappropriate.

*Albro*, 585 N.E.2d at 670.

■ However, *Albro*'s footnote 5 offered guidance to the trial court upon remand in that case. In the footnote, Judge Shields suggested that "a better process for proving the chargeable expenses is to look at the

---

partment, and a statement of chargeable and nonchargeable expenses. However, the record also establishes that the determination of the chargeable versus the nonchargeable expenses results from a survey in which the surveyed party is asked to set forth the nonchargeable activities. For example, the 1985–86 Report by Staff on Activities Which Cannot be Charged to the Fair Share Fee Payer asks for time spent and amounts expended on only nonchargeable activities. Therefore, we construe [the union]'s statement that it proved chargeable expenditures as an assertion that while it proved chargeable expenditures it did so by proving its nonchargeable expenditures and not as an assertion that it proved its chargeable expenses by determining only chargeable items. The record readily establishes that [the union] determined chargeable items by subtracting nonchargeable expenses from the total expenses.
*Albro*, 585 N.E.2d at 668 n. 2 (citations omitted).

**6.** The Teachers argue:

Instead of explaining and sustaining their burden of proof, the unions' affidavits and exhibits

contain only conclusory statements, like "For 1992–93, ISTA determined that 88.07% of its costs were properly charged to the faire share fee payers." ... Although affidavits of top union officials state that staff members were instructed to record their chargeable and nonchargeable "time and expenses" and that these union officials obtained information from those "time" reporting forms and expenses forms in unilaterally preparing the "fair share" fee calculation, the unions never produced the "time" and expenses forms, although these forms would have been better evidence than the conclusions reached by their superiors.... The importance of these "time" reports can not [sic] be overstated, since the union employee completing the report is the only individual with **firsthand knowledge** as to how much time and cost were expend [sic] on chargeable and nonchargeable activities.... The mere existence of employee "time" and expense forms is not evidence that all the deficiencies previously found by *Albro* in the unions' original staff surveys have been cured.
Appellant's Brief at 8, 15, 17 (emphasis and quotation marks in original).

exact nature of the expenses and evaluate whether that expense can be charged by using the three-prong *Lehnert* standard and requiring the union to bear the burden of proving the chargeability of all challenged expenses or activities." *Albro*, 585 N.E.2d at 670, n. 5 (citing *Lehnert v. Ferris Faculty Assoc.* (1991), 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572). Thus, following the recommendation in *Albro*, we examine whether the Associations presented sufficient evidence of the exact nature of the chargeable expenses to allow a court to determine that the expenses are for activities that are "germane" to collective bargaining, justified by the government's vital policy interest in labor peace and avoiding "free riders," and that do not significantly add to the burdening of free speech that is inherent in allowing an agency or union shop. *See Lehnert*, 500 U.S. at 518, 111 S.Ct. at 1958.[7]

Along with their motion for summary judgment, the Associations filed designations of material fact for each Association, a supporting brief, seven affidavits, and a volume containing thirteen exhibits totaling 574 pages in an attempt to satisfy the burden of affirmatively proving the chargeable expenses upon which the fair share fees were based.

The Associations asserted that they included only the expenditures permissible under *Albro* as part of the fair share fees. In support of this, each Association designated the affidavit of its President which asserts that most of the local funds were spent on collective bargaining and other duties of an exclusive representative. To corroborate these contentions, the Associations provided financial statements showing expenditures for the school year, and to supplement the financial information, the affidavits described, line by line, the categories of expenses in the Association's budget. Within

each category, expenditures were designated as "chargeable" or "nonchargeable."

The affidavit of ISTA's associate executive director asserts that ISTA implemented its agency fee procedure with the *Albro* decision in mind. Each staff member contemporaneously documented time spent on both chargeable and non-chargeable activities. At the end of the year, ISTA also conducted an investigation of chargeable and noncharge-able expenses and corrected any deficiencies. To comply with *Albro*, ISTA recalculated all staff time and expenses devoted to defensive organizing or to the retention of existing members of the Association and treated those expenses as nonchargeable. Based on this record keeping and calculation, ISTA issued the Report of ISTA's Fair Share Fee Calculation for the Membership Year of 1992–93 which describes the functions of the various ISTA departments and programs and specifically identifies the activities within those programs charged to the Teachers.

The affidavit of NEA's staff counsel establishes that the NEA adopted procedures for keeping track of and calculating agency fees. NEA calculated its fair share fee in much the same way as ISTA. The Associations also designated detailed tables listing the location of relevant evidence of chargeable expenses for ISTA and NEA. These tables delineate each department and cite particular paragraphs in relevant affidavits which describe departments' activities. Further, there are charts that give page references to assist the Teachers and courts in tracing and understanding the basis of the fee from its place in the budget, to the audit and through final calculation. An independent auditor verified the amounts reflected in the financial documents of ISTA and NEA, and verified the calculations for the final chargeable percentages.

7. The Teachers contend that "[o]ne searches the unions' affidavits and exhibits in vain for any affirmative discussion of the relationship and nexus between the unions' activities and expenditures and the teachers' bargaining unit and collective bargaining agreement. One searches in vain for any affirmative discussion of how each of the association's and their affiliates' major activities and expenditures satisfy all three prongs of the *Albro/Lehnert* test." Appellants' Brief at 22 (emphasis in original). *Albro* does not hold that a union is required to discuss how each activity and expenditure satisfies the *Lehnert* standard before it is entitled to judgment in its favor. Although a union's fair share fee determination must comply with the three-prong *Lehnert* standard, it is the courts which employ the standard to determine, in case-by-case analysis, "which activities a union constitutionally may charge to dissenting employees." *Lehnert*, 500 U.S. at 518, 111 S.Ct. at 1958.

■ Finally, the Teachers charge that "'[f]air share' fee collection cases cannot be fully adjudicated on a motion for summary judgment because this Court requires unions to affirmatively prove their chargeable costs." Appellant's Brief at 7. They argue that "summary judgment is not an appropriate means of resolving the credibility of witnesses and evidence, the weight to be given to the testimony, and the conflicting inferences which may be drawn from undisputed facts—questions which permeate fee cases." Appellant's Brief at 11. There is nothing inherent in fair share fee collection actions that would prohibit the use of summary judgment. Certainly, if the credibility of witnesses and evidence, the weight of testimony, and conflicting inferences are raised properly by the nonmoving party, summary judgment will not be granted. However, when the facts of a case are not in dispute, summary judgment may be suitable to determine the law of the case. *See Northern Indiana Pub. Serv. v. East Chicago Sanitary Dist.* (1992), Ind.App., 590 N.E.2d 1067 (Although summary judgment is generally inappropriate in negligence actions, if the facts of the case are not in dispute, summary judgment is appropriate to test the law of a negligence action.).

■ Contrary to the Teachers' contentions, that the Associations' affidavits contain mere conclusory statements, the designated evidence is sufficiently detailed and exact to allow us to determine that the activities and expenses satisfy the three-prong *Lehnert* standard and the *Albro* burden to prove chargeable expenses affirmatively.[8] *See also Aldrich,* 585 N.E.2d at 11–12.

## II.

Next, the Teachers contend that they affirmatively set forth specific facts establishing the existence of genuine issues in dispute and thus the trial court erred in granting summary judgment to the Associations.

A party opposing a motion for summary judgment must "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." T.R. 56(C). In addition to this specification, a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). We are "no longer free to search the entire record" to review a decision on summary judgment, *Inland,* 608 N.E.2d at 1381, rather, T.R. 56(C) "requires a nonmoving party to identify specifically the parts of pleadings, deposition, answers to interrogatories, and admissions on which he relies ... We are forbidden to reverse a summary judgment unless the evidence has been specifically designated to the trial court." *Terrell v. Rowsey* (1995), Ind.App., 647 N.E.2d 662, 666.

In opposition to the Associations' Motion for Summary Judgment, the Teachers filed three types of documents:

1. Five identical Objections to Affidavits Filed and Exhibits Tendered which state that "assertions of fact made therein are conclusory and inadmissible at trial and in general do not comply with the standard for meeting Plaintiff's burden of proof for proof of fair share fees." (R. at 64); *see* (R. at 64–66, 77–88).

2. Five identical affidavits which state that the Teachers "never received from the Plaintiff information that presents to me in an understandable fashion an adequate basis for the fee which represents my share of the cost of collective bargaining with my employer." (R. at 67); *see* (R. at 67–76).

3. Five identical memoranda in opposition to summary judgment discussing the relevant legal precedent.

---

**8.** The Teachers also argue that "[t]he unions control the facts and records from which the proportion of chargeable total union expenditures can reasonably be calculated, which results in the appropriate 'fair share' fee. Summary judgment procedures should be used very sparingly, if at all, when the proof is the hands of the alleged wrongdoers." Appellant's Brief at 13. The Teachers seem to forget that they refused to pay their fair share fees, and are, if any party is, the alleged wrongdoers in this case. Further, we note that the proof in this case was totally in the hands of the Associations because the Teachers chose not to engage in discovery.

We agree with the trial court which found that the Teachers, "in their initial response through Affidavits and 'Objections to Summary Judgment,' failed to designate evidence to establish the existence of a factual issue for trial. Bare contentions that a factual dispute exists are not sufficient to raise a factual issue." (R. at 253).

At the hearing on Summary Judgment, four Teachers filed additional affidavits:

1. Adams objected to arbitration by AAA and stated that he had insufficient time to review the packet he received in the fall and some of the material was difficult to follow. Adams asserted that the documents submitted by the ISTA were insufficient to prove the amount of the fair share fee; "discuss" as defined by I.C. 20–7.5–1–2(o) was separate from collective bargaining,[9] there was no factual basis for union assertion that "100% of expenses for administering its corporate status and dealing with its employees are chargeable;" and only 13% of union's strategic objectives listed in ISTA's 1992 Plan of Action could meet the *Lehnert* standard. (R. 325–330).

2. Flosenzier asserted that the there was insufficient documentation to prove how union staff employees spent their time, and how retirement contributions, travel, office equipment, supplies, and maintenance is germane to collective bargaining. (R. at 332–335).

3. Miller asserted that the Associations' documentation is hard to understand, and, according to his calculations, 15% of ISTA expenses are chargeable. He also stated "Are we to believe that all of the Corporate items of insurance, office expense, temporary help, auditing fee, administra-

tive fees, trustee fees, interest expense, telephone, early retirement and paper are all 100% chargeable items." (R. 336–37)

4. Setnor asserted that the Associations' documentation is hard to understand and objects to the language in Exhibit 12, ISTA's Fair Share Fee Calculation. (R. 338–39).

The additional affidavits and testimony of the Teachers, although more particularized, still do not identify facts in dispute or otherwise raise issues.[10] The mere statement that there was no factual basis for the Associations' assertion that its expenses for administering its corporate status and dealing with its employees are chargeable is not, by itself, sufficient to raise a genuine issue of material fact which would preclude summary judgment.[11] As the Supreme Court concluded in *Anderson v. Liberty Lobby* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the [moving party], as long as the [nonmovant] has had a full opportunity to conduct discovery." *Id.* at 257, 106 S.Ct. at 2514. The Teachers had the opportunity to conduct discovery and yet they failed to designate evidence which would establish the existence of a factual issue for trial. In this case, summary judgment was properly granted to the Associations.

Judgment affirmed.

RUCKER and NAJAM, JJ., concur.

---

9. "Discussion" with a school employer is a specific duty of the Associations pursuant to I.C. 20–7.5–1–5.

10. For the first time in their Brief, the Teachers cite to a document entitled "Cost Accounting Standards." This document was not designated to the trial court, and thus will not be considered on review.

11. Assuming arguendo, that this statement sufficiently raises the issue of administrative expenses, the treatment of such expenses as chargeable is supported by decisions from the

Illinois Employee Labor Relations Board. *See Round Lake* (1989), 5 PERI 1183; *Alton* (1990), 6 PERI 1118; *DuQuoi* (1988), 4 PERI 1064. The Supreme Court has also held that expenses for union conventions are chargeable. Administrative and overhead costs, like convention expenses, are necessary for maintenance of the Associations' "corporate or associational existence," and thus are fully chargeable to nonmembers. *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks* (1984) 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428; *see also Lehnert,* 500 U.S. at 518, 111 S.Ct. at 1958.