STATE EX REL. OSBORN *v.* EDDINGTON.

[No. 26,431.   Filed April 9, 1935.]

*Owen S. Boling, Fabius Gwin,* and *Edgar M. Blessing,* for appellant.

*Frank E. Gilkison,* for appellee.

TREANOR, J.—The appellant, relator, brought this action by a complaint in the nature of a *quo warranto* to determine whether the appellant or appellee was entitled to the office of county superintendent of Martin county, Indiana. Later both parties filed an agreed statement of facts, which was entitled the same as the complaint, and accompanied by an affidavit stating that the controversy in the cause was real, and that the proceedings were in good faith to determine the rights of the parties in the action.

The record shows that the cause was submitted to the court upon the agreed statement of facts and that the court's conclusions of law were based entirely upon the agreed statement. Judgment was entered for appellee, defendant below, upon the conclusions of law and appellant excepted to the court's finding and judgment. Appellant also filed a motion for a new trial, which was overruled.

Appellant assigns as error: (1) that the court erred in its conclusions of law upon the agreed statement of

facts; and (2) that the court erred in overruling appellant's motion for a new trial.

Neither answer nor demurrer was filed to the complaint and the trial court considered only the facts contained in the agreed statement. The parties and the trial court treated the proceedings below as a trial of an agreed case as authorized by statute. (§§2-2201—2-2203, Burns Ind. Ann. St. 1933, Acts 1881 [sp. sess.], §§456-58, ch. 38, p. 240, §§362-64, Baldwin's Ind. St. 1934.) And despite the presence in the record of unnecessary matter, such as the complaint and the motion for a new trial, we shall treat this appeal as one from a judgment in an agreed case. "Where parties agree upon a theory we can not with propriety deny their agreement, except, perhaps, where it is plainly necessary to do so in order to prevent manifest injustice." *Booth* v. *Cottingham, Guardian* (1891), 126 Ind. 431, 432, 26 N. E. 84.

Appellee points out in his brief certain irregularities in appellant's brief and in the assignment of errors. But appellant, thereafter, seasonably applied to this court for permission to amend his brief and assignment of errors, and his request was granted. The amended brief substantially complies with the rules of this court and the alleged defect in the assignment of errors was cured.

Appellee also urges that "the certificate of the clerk does not state or indicate that the transcript contains the finding and judgment of the trial court from which the alleged appeal is taken."

The praecipe calls for "a full, true and complete transcript of the proceedings, papers on file and judgment in the above entitled cause to be used on appeal to the Supreme Court."

The statute directs that the clerk's certificate shall recite, in substance, "that the above and foregoing tran-

script contains full, true and correct copies, or the originals, of all papers and entries in said cause required by the above and foregoing praecipe." (§2-3112, Burns, etc., 1933; §466, Baldwin's, etc., 1934; Acts 1903, ch. 193, §7, p. 338; Acts 1933, ch. 185, §1, p. 918.)

The certificate in appellant's transcript certifies "that the above and foregoing transcript contains (a) full, true and complete copies of all papers and entries made in said cause filed in my office as such clerk and recorded in the records of this office."

We consider the certificate sufficient to indicate that the transcript includes all that the praecipe calls for. Appellee relies upon the case of *Yeoman* v. *Shaffer* (1905), 155 Ind. 308, 310, 57 N. E. 546, but the language of the praecipe and certificate in that case is substantially different from that of the praecipe and certificate in the instant case. The praecipe in *Yeoman* v. *Shaeffer* called for a "transcript of the proceedings, *papers on file introduced,* and judgment"; and the certificate stated that the transcript contained "true and complete copies of all the papers introduced and entries made in said cause." The objection to the certificate was that it did not certify that the transcript included copies of all papers pertaining to the cause and filed therein, but only "copies of all papers introduced." Consequently this court could not assume that it had before it all papers pertaining to the cause and filed therein. But in the instant appeal we know that the transcript contains copies of all papers filed in and pertaining to the cause and of all entries made therein which have any significance on appeal.

The record for a trial of an agreed case consists only of the statement of the case, the submission and the judgment. (§2-2203, Burns Ind. Ann. St. 1933, *supra.*) The only question for decision upon appeal is one of "law as it arises upon the facts

agreed upon. The question is one of law, and not of facts or of fact and law." *Fisher* v. *Purdue* (1874), 48 Ind. 323, 326. Consequently the transcript for an appeal from a judgment in an agreed case need contain only a copy of the agreed statement of facts, and copies of entries of the submission, decision and exception thereto, and judgment. The praecipe included the foregoing and the certificate of the clerk was sufficient to indicate that they were included in the transcript.

This appeal, upon its merits, turns upon a single question of law: Is the county superintendent of schools a county officer within the meaning of §4, Art. VI, of the Constitution of Indiana?

Appellant contends that a county superintendent is a school officer of the state who functions as an agent of the state in the administration of the state system of public education; that he is designated as county superintendent only because his official activities are limited to a particular county.

The people of Indiana have translated into a fundamental constitutional postulate the belief that the general diffusion of knowledge and learning throughout a community is essential to the preservation of free government. And in harmony with this constitutional postulate the Constitution recognizes that the business of education is a governmental function and makes public education a function of state government as distinguished from local government. §1, Art. VIII, Indiana Constitution. "It was evidently the intention of the framers of the Constitution to place the common school system under the direct control and supervision of the state, and make it a quasi-department of the state government"; (*Greencastle Twp.* v. *Black* [1854], 5 Ind. 557, 563) "a centralized and not a localized form of school government." *State ex rel.* v. *Ogan* (1902), 159 Ind. 119, 121, 63 N. E. 227.

Under the legislative act of 1852 (§§4 and 32, ch. 98, p. 439, R. S. 1852, Vol. I) the civil townships, towns and cities were made school districts.[1] By later legislative enactment civil townships and incorporated towns and cities were made "distinct municipal corporations for school purposes" (§28-2402, Burns, etc., 1933, Acts 1865, ch. I, p. 3, §4) and thus the school government of the state was separated from civil government. Consequently school corporations and school officers, as such, do not act as agents of civil municipal corporations or civil administrative units. This was pointed out, as respects school cities, in the case of *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 211, 57 N. E. 920:

> "Equally untenable is their argument whereby they concede that it may be true that a school city is a distinct municipal corporation, but contend that it is only an agency of the civil city to discharge the functions of the latter in respect to the affairs of common schools. It is established by the decisions of this court heretofore cited that this proposition is not true. The government or management of our free common schools, as it has been frequently affirmed by this court, is a matter of state concern, and the various school corporations and school boards are, as a general rule, the agencies of the state in this respect for executing its functions. As well said by counsel for appellee, if one sustains the relation of agent to another, it must be with reference to some matter which pertains to or concerns the principal."

The office of county superintendent of schools is not provided for in the Constitution, nor does the Constitution define county office. Consequently, in order to determine whether the county superintendent of schools

---

*Note 1.* "The whole territory of the state is divided into school districts under the general school system, including the towns and cities— they are school districts. . . . The state is divided into districts for common school purposes. The cities and towns form a part of the districts, and must do so, to render the school system general and uniform." *City of Lafayette* v. *Jenners* (1858), 10 Ind. 70.

is a county officer we must accept some definition of county officer and, in the light of such definition, examine his official duties and his official relationship to the county and to the state.

The Supreme Court of the United States has defined a county officer as follows: "An officer of the county is one by whom a county performs its usual political functions; its functions of government." *Sheboygan County* v. *Parker* (1865), 70 U. S. 93, 96.

The county superintendent performs no functions of government for the county of a political or civil character. His powers and duties relate entirely to the functions of school government. The county is not an administrative agency for school government, either as a school corporation or school district. Consequently the powers and duties of a county superintendent of schools can not devolve upon him as an officer of a county; but must devolve upon him as an officer of the public school system, which is a state institution. All of the powers and duties of a county superintendent pertain to the administration of school government. He has general superintendence over schools of his county and "shall at all times carry out the orders and instructions of the state board (of) education and the state superintendent of public instruction, and shall constitute the medium between such state superintendent and subordinate school officers and the schools." (§28-704, Burns, etc., 1933, §5938, Baldwin's 1934, Acts 1899, ch. 143, §4, p. 240.) Appeals may be taken to the county superintendent from decisions of township trustees relating to school matters, and from the decisions of county superintendents to the state superintendent. (§28-704, *supra*.) As stated in *Elmore* v. *Overton* (1886), 104 Ind. 548, 4 N. E. 197, the office

of county superintendent "belongs to the executive department of the state, and the duties attached to it are, strictly speaking, of a merely administrative character, that is, are in aid of the execution of, and assist in giving force and effect to other provisions of our common school system."

The Supreme Court of Texas had occasion to consider a question quite similar to the one before us. The Texas Constitution contains a school provision much like our own and which is as follows:

"A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public schools."

Under the school law of Texas the county superintendent was required to apportion school funds to school districts. One of the school districts sued a county on the theory that the county was liable for the failure of the county superintendent to properly apportion the school funds. The reasoning of the Texas Supreme Court in support of its conclusion that the county was not liable is disclosed by the following excerpts from its opinion and is applicable to the question presented in the case at bar:

"Though, in a sense, a county officer, and though called 'county superintendent,' he is, in fact, the officer and agent of the state,—the state having assumed the functions of maintaining public free schools for the education of the children throughout its domain, the counties being recognized with reference to that business merely as convenient subdivisions of territory and some of their officers as proper agents for the administration of affairs relating to the public free schools. Such officers, with respect to such affairs, act for the state, and not for the county. This is the case even as to officers who in other respects are county officers in fact as well as in name." *Webb County* v. *Board of*

*School Trustees of Laredo* (1901), 95 Tex. 131, 139, 65 S. W. 878.

It is clear that a county superintendent of schools does not perform any political functions for the county as a unit of civil government and his powers and duties relate entirely to the administration of our public school system, which is a function of the state government. In legal theory and administrative practice he is an official agent of the state in its administration of the school system. "His responsibility is to the state, and the fact that he performs his duties within a fixed territorial boundary limited by county lines is only an incident. Those territorial boundaries might have included three counties as well as one."[2]

We hold that a county superintendent of schools is not a county officer within the meaning of §4 of Art. VI of the state Constitution.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment on the agreed case in conformity with our holding.

*Note 2.*   Reports and Opinions Attorney General of Indiana, 1929-30, pp. 242, 244.