Gail A. FORD, Lisa Guilkey, Sheryl Hackney, Sally J. Herring, Rebecca L. Hindman, Jane Holloway, Jane A. Landis, Carol McIntosh, and Dennis Pickering, Appellants–Defendants,

v.

**MADISON-GRANT TEACHERS ASSOCIATION, Appellee–Plaintiff.**

No. 27A02–9602–CV–102.

Court of Appeals of Indiana.

Jan. 15, 1997.

Transfer Denied May 29, 1997.

William T. Hopkins, Jr., Jeffrey S. Schafer, Gallucci, Hopkins & Theisen, Fort Wayne, for Appellants–Defendants.

Richard J. Darko, Susan P. Stuart, Lowe, Gray, Steele & Darko, Indianapolis, for Appellee–Plaintiff.

## OPINION

ROBERTSON, Judge.

Gail A. Ford, Lisa Guilkey, Sheryl Hackney, Sally J. Herring, Rebecca L. Hindman, Jane Holloway, Jane A. Landis, Carol McIntosh, and Dennis Pickering appeal the grant of summary judgment to the Madison–Grant Teachers Association. The Appellants are all Teachers who are non-members of the Association. They claim that the trial court com-

mitted error when it denied their motion for summary judgment and instead granted the Association's motion for summary judgment. They raise four issues on appeal, but one is dispositive:

> The trial court erred in determining that the fair share fee provision in the agreement between the association and the School Board constitutes a valid and enforceable obligation and does not violate any constitutional rights of the non-member Teachers.

We reverse and remand with instructions.

The non-member Teachers are employees of the Board of School Trustees of the Madison–Grant United School Corporation. The Association is the exclusive bargaining representative of all of the teachers, including the non-member Teachers, of the School Corporation. The Association and the School Board entered into a collective bargaining agreement for the 1992–93 school year. The master contract contained the following provisions, in pertinent part, under the heading "2.500 Dues Deduction:"

> A. The Board and the Association agree that *all members of the bargaining unit have an obligation to pay a fair share [fee] to the Association, in an amount equal to the membership dues of the Association,* including the Indiana State Teachers' Association and the National Education Association. . . .
>
> B. By October 1 of each year the Association shall provide the Board with a list of bargaining unit members who are not also Association members and wish to pay the fair share fee by payroll deduction. The Board will deduct the fair share in twenty (20) equal installments from the payroll of each person who submits an authorization and within thirty days except in case of emergency transmit the amount so deducted to the Association. . . . *Persons who refuse to sign an authorization form or who revoke an executed form have a continuing enforceable obligation to pay the fair share fee directly to the Association.* The association recognizes that no member of the bargaining unit should be forced to contribute financial support to

political or ideological activities, or other activities, that are unrelated to its duties as exclusive bargaining representative. Consequently, *the Association agrees to adopt an internal Association remedy providing for a pro rate [sic] refund of the Fair share fee to persons who so request.*

The trial court considered all of the designated evidentiary material and reached the following conclusion:

> The fair share fee provision in the agreement between the Association and the School Board constitutes a valid and enforceable obligation of the [nonmember Teachers] by which the Association may collect a fair share fee from the certified school employees who were members of the bargaining unit and nonmembers of the Association in the 1992–93 school year. The language contained in the fair share fee provision does not violate any constitutional rights of the [non-member Teachers].

As noted, the trial court granted summary judgment in favor of the Association.

▇▇▇ The purpose of summary judgment is to end litigation about which no factual dispute exists and which may be determined as a matter of law. *Flosenzier v. John Glenn Education Association,* 656 N.E.2d 864, 866 (Ind.Ct.App.1995), *trans. denied.* When we review a grant of summary judgment, we face the same issues as the trial court and carefully scrutinize the trial court's determination to ensure that the party which did not prevail was not improperly denied its day in court. *Id.* On appeal, the trial court's grant of summary judgment is clothed with a presumption of validity. *Id.* The appellants bear the burden to prove the trial court erroneously determined that no genuine issue of material fact exists and that the movants were entitled to judgment as a matter of law. *Id.* We liberally construe all inferences and resolve all doubts in the non-movants' favor. *Id.* Despite a conflict in facts and inferences on some elements of a claim, summary judgment may be proper when no dispute exists with regard to the facts which are dispositive of the litigation. *Id.*

At the outset, we note that Indiana has no statute which specifically authorizes a fair share fee provision in a master contract between a school board and a teacher but that our laws generally allow such a provision. *See Fort Wayne Education Association, Inc. v. Goetz,* 443 N.E.2d 364 (Ind.Ct.App.1982). As per an amendment in 1995, however, Ind. Code 20–7.5–1–6(a) states that a school employee may not be required to financially support a school employee organization through the payment of fair share fees.

■■■ Through the contract with the Association, the School Board has required the nonmember Teachers to support the Association as their collective bargaining representative. A requirement that nonunion employees support a collective-bargaining representative has an impact upon their First Amendment interests and may well interfere in some way with an employee's freedom of association to advance ideas, or to refrain from doing so, if the employee sees fit. *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 302, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986). The Supreme Court of the United States has rejected a claim that it is unconstitutional for a public employer to designate a union as the exclusive collective bargaining representative of its employees and to require nonunion employees, as a condition of employment, to pay a fair share of the union's cost of negotiating and administering a collective-bargaining agreement. *Id.* at 302, 106 S.Ct. at 1073 (citing *Abood v. Detroit Board of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261) (footnote omitted). The Court has also held, however, that nonunion employees have a constitutional right to "prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative." *Id.* at 303, 106 S.Ct. at 1073 (quoting *Abood,* at 234, 97 S.Ct. at 1799) (footnote omitted). The objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities. *Id.* at 303, 106 S.Ct. at 1074.

Procedural safeguards are necessary to achieve this objective for two reasons. First, although the government interest in labor peace is strong enough to support an "agency shop" notwithstanding its limited infringement on nonunion employees' constitutional rights, the fact that those rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement. Second, the nonunion employee—the individual whose First Amendment rights are being affected—must have a fair opportunity to identify the impact of the governmental action on his interests and to assert a meritorious First Amendment Claim.

*Id.* at 303–304, 106 S.Ct. at 1074 (footnotes omitted). Those activities which are chargeable to the nonunion employees must (1) be "germane" to collective-bargaining activity, (2) be justified by the government's vital policy interest in labor peace and avoiding "free riders," and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. *Lehnert v. Ferris Faculty Association,* 500 U.S. 507, 520, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572 (1991).

■■■ The Indiana Constitution recognizes that the business of education is a governmental function and makes public education a function of state government. *State ex rel. Osborn v. Eddington,* 208 Ind. 160, 195 N.E. 92 (1935). In the present case, the School Board entered into a contract with the fair share fee provisions listed above and thereby engaged in government action sufficient to have had an impact upon the First Amendment interests of the non-member Teachers. Because the Association has sought to enforce the provisions of the master contract, the Association bears the burden to establish that the procedures which deal with the fare share fees are carefully tailored to minimize the infringement on First Amendment rights.

■■■ A remedy which merely offers dissenters the possibility of a rebate does not avoid the risk that dissenters' funds may be used temporarily for an improper purpose.

*Hudson,* at 306, 106 S.Ct. at 1075. The Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining. *Id.* (quoting *Abood,* at 244, 97 S.Ct. at 1804 (concurring opinion)). The amount at stake for each individual dissenter does not diminish this concern; for, whatever the amount, the quality of the interest in not being compelled to subsidize the propagation of political or ideological views that they oppose is clear. *Id.* A forced exaction followed by a rebate equal to the amount improperly expended is thus not a permissible response to the nonunion employees' objections. *Id.* at 306, 106 S.Ct. at 1075.

Here, the master contract states that the obligation to pay the fee is a continuing obligation regardless of whether the non-union employees have the amounts deducted from their pay. Thus, even without any payroll deductions, the payment of the fee is mandatory.

 The master contract provides for a continuing and enforceable obligation to pay what is called a "fair share fee" but which is in an amount equal to the membership dues of the Association. The Association does not dispute that its membership dues include expenses not properly chargeable for collective bargaining activities and, in fact, has pursued, as an amount of actual fair share fees properly chargeable for collective bargaining activities, an amount less than that set for membership dues. From these circumstances, one must conclude that the alleged "fair share fee" of the master contract includes expenses not properly chargeable for collective bargaining activities.

Further, although the master contract provides for a refund to persons who so request, the contract states that the "Association agrees to adopt an internal Association remedy providing for a pro rate [sic] refund *of the Fair Share fee* " (emphasis added). A "fair share fee" which requires a refund to make it proper is not, in fact, a fair share fee. Thus, this provision further supports the conclusion that the "fair share fee" mandated in the

contract is not actually a fee which includes only those properly chargeable expenses of collective bargaining but is a fee greater than that necessary to preclude "free riders" and which includes improper, non-chargeable expenses.

Here, the "fair share fee" of the master contract constitutes a forced exaction of a service fee followed by a mere possibility of a rebate equal to the amount improperly included. The master contract provides for the exaction of the fee from nonmembers without first having established a procedure to avoid the risk that funds would be used, even temporarily, to finance ideological activities unrelated to collective bargaining. *See Hudson,* 475 U.S. at 305, 106 S.Ct. at 1075. For these reasons, the provisions do not provide the non-member Teachers with a permissible response to their objections.

Moreover, the provisions of the master contract are the sole source of authorization for the Association to obtain fair share fees from the non-member Teachers. The procedures provided in the contract, however, are not carefully tailored to minimize the infringement of First Amendment rights. The affirmative obligation to pay the improper fees does not permit the non-member Teachers to refrain from participation in the advancement of ideas which they oppose. Therefore, the fair share fee provisions are fundamentally flawed.

 The Association notes that the master contract contains a severability clause and claims that any improper provision related to the fair share fee may be severed from the rest of the contract without diminishing the obligation of the non-member Teachers to pay a fair share fee to the Association. Again, however, the provisions listed in the master contract are the sole authorization for the Association to obtain fair share fees from the non-member Teachers. The "fair share fees" mandated in the contract undisputedly contain expenses not properly chargeable for collective bargaining activities. To sever from the contract the offensive portions of the provisions would be to extinguish any obligation of the nonmember Teachers to pay a fair share fee. Thus, the grant of summary judgment in favor of the non-member Teacher is proper.

The Association also claims that the non-member Teachers have not shown a violation of their First Amendment rights because they never paid the fee. As noted, however, the fee is improper because it includes expenses not properly chargeable to nonunion members. The master contract affirmatively provides that the non-member teachers have a continuing and enforceable obligation to pay the fee. The non-member Teachers have established that the contract improperly obligated them to pay an improper fee and therefore have demonstrated a sufficient violation of their First Amendment rights to secure summary judgment.

The Association further claims that the non-member Teachers have not shown a violation of their First Amendment rights because the Association never implemented a rebate procedure. Instead, the Association has utilized a notice and arbitration procedure to calculate the expenses properly chargeable for collective bargaining activities and has relied upon the calculation as the fair share fee amount. Again, however, the master contract is the sole authorization for the Association to obtain fair share fees from the non-member Teachers and the "fair share fees" of the contract undisputedly contain expenses not properly chargeable for collective bargaining activities. Despite any internal procedure which avoids the plain language of the master contract, the contract clearly provides that payment of those fees is mandatory regardless of their impropriety. Therein lies the fundamental flaw and the infringement of the First Amendment.

The trial court should have granted summary judgment to the non-member Teachers. We therefore reverse the grant of summary judgment in favor of the Association and remand this case to the trial court with instructions to grant summary judgment in favor of the nonmember Teachers.

Judgment reversed and remanded with instructions.

NAJAM and GARRARD, JJ., concur.