**WHITLEY COUNTY TEACHERS ASSOCIATION, Appellant–Plaintiff,**

v.

**Angela BAUER, et al., Appellees–Defendants.**

**Whitley County Teachers Association, Appellant–Plaintiff,**

v.

**Louise Barber, et al., Appellees–Defendants.**

No. 92A03–9806–CV–251.

Court of Appeals of Indiana.

Nov. 5, 1999.

Richard J. Darko, Kevin M. Kohart, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorney for Appellant.

William T. Hopkins, Jr., Jeffrey S. Schafer, Barnes & Thornburg, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

In this consolidated appeal, Plaintiff-Appellant Whitley County Teachers Association ("WCTA") appeals the trial court's grant of summary judgment in favor of Angela Bauer, et. al. and Louise Barber, et. al. ("nonmember teachers") regarding the fair share fee provision of the collective bargaining agreement (CBA) between WCTA and the Board of School Trustees of Whitley County School Corporation ("School Board").

We reverse and remand with instructions.[1]

### ISSUES

WCTA raises several issues for our consideration which we consolidate and restate as follows:

1. Whether the fair share provision in the CBA between WCTA and the School Board is unconstitutional.

2. Whether the fair share provision in the CBA is procedurally inadequate.

3. Whether there are alternative grounds for affirming the trial court's grant of summary judgment for the nonmember teachers.

4. Whether the trial court improperly denied WCTA's motion for summary judgment.

### FACTS AND PROCEDURAL HISTORY

This appeal is a consolidation of two substantially similar lower court cases filed by the WCTA against its nonmembers for the collection of 1993–1994 fair share fees and 1994–1995 fair share fees. At issue in both cases is the "fair share fee" provision found in the CBA between the School Board and WCTA.[2] WCTA serves as the exclusive bargaining representative for the teachers within the school system. *See* Ind.Code § 20–7.5–1. While all of the teachers are members of the bargaining unit represented by WCTA, not all are members of WCTA.

In each case, the CBA contains a fair share fee provision which reads in pertinent part as follows:

SECTION B   FAIR SHARE

1. The BOARD and WCTA agree that all members of the bargaining unit who are not also members of WCTA have an obligation to pay a fair share to WCTA, in an amount equal to the membership dues of WCTA, including the Indiana State Teachers' Association and the National Educaiton [sic] Association. This obligation applies to persons who become members of the bargaining unit during the life of the agreement, as well as to persons who are members of the bargaining unit on the effective date of this agreement.

2. By October 1 of each year the WCTA shall provide the BOARD with a list of bargaining unit members who are not also WCTA mem-

---

1. Oral Argument was held in this case on July 20, 1999.

2. Such "fair share" provisions are now void in Indiana. Ind.Code § 20–7.5–1–6(a) was amended in 1995, and now states in part: "A school employee may not be required to join or financially support through the payment of fair share fees, representation fees, profes-

sional fees, or other fees, a school employee organization. A rule, regulation, or contract provision requiring financial support from a school employee to a school employee organization is void." However, this prohibition applies to contracts bargained after July 1, 1995, and, therefore, does not apply to this case.

bers and wish to pay the fair share fee by payroll deduction. The BOARD will deduct the fair share fe [sic] in twenty (20) equal installments, beginning with the second pay period in October, from the payroll of each person who submits an authorization and will transmit the amount so deducted to the WCTA at the same time as dues which have been deducted as specified above in SECTION A. New employees hired during the school year who choose not to join the WCTA within thirty (30) days of employment shall have their fair share deducted in equal installments from the remaining pay periods from which fair share fees are deducted during that year. Persons who refuse to sign an authorization form or who revoke an executed form have a continuing enforceable obligation to pay the fair share fee directly to the WCTA.

3. The WCTA recognizes that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities, or other activities, that are unrelated to its duties as exclusive bargaining representative. Consequently, the WCTA agrees that any person who objects to paying for such activities is entitled to pay a reduced fair share fee for objectors.

(Barber R. 95).[3]

The above provision was included in the CBA for both the 1993–1994 and 1994–1995 school years. In the fall of the respective school years, the WCTA distributed to nonmember teachers a packet of information regarding the payment of fair share fees. Included in the packet were financial disclosure documents detailing information used to calculate expenses properly chargeable to nonmember teachers, as well as an Option Sheet to be used by the teachers to select the method by which they would pay their fair share fee. The Option Sheet for the 1993–1994 school year[4] included the following options:

OPTION 1:

Based upon the financial information provided, I am paying my fair share fee in the amount of $457.00 which includes the political and ideological expenditures and the expenditures on other matters unrelated to the duties of the exclusive representative. I waive my right to object to the calculation of the fair share fee before an impartial arbitrator.

OPTION 2:

Based upon the financial information provided, I am paying my fair share fee for objectors in the amount estimated by the Whitley County Teachers Association, but object to any money being

---

3. Because this is a consolidated case, the Record of Proceedings and Supplemental Record of Proceedings from the Bauer case will be referred to as "Bauer R." and "Bauer Supp. R." The Record of Proceedings, Supplemental Record of Proceedings, and Second Supplemental Record of Proceedings from the Barber case will be referred to as "Barber. R.," "Barber Supp. R." and "Barber 2nd Supp. R.," respectively.

4. The wording of Option 1 listed on the 1994–1995 Option Sheet, was identical to the language of Option 1 on the 1993–1994 Option Sheet, except the 1994–1995 fair share fee amount was $465.00. The wording of Option 3 was also identical for both school years. However, the language of Option 2 listed on the 1994–1995 Option Sheet was slightly different from the 1993–1994 Option Sheet, and the 1994–1995 wording was as follows:

OPTION 2:
Based upon the financial information provided, I am paying my fair share fee for objectors in the amount estimated by the Whitley County Teachers Association, but I object to paying any part of the cost of the political and ideological expenses of the Association, and to other matters which the courts have held not properly chargeable to the fair share fee if I object. I will pay the fair share fee in the amount of $378.19. I understand that if an impartial arbitrator determines the amount owed is less than this amount, the difference will be returned to me.
(Barber 2nd Supp. R. 1135).

spent on political or ideological matters or other matters not related to the duties of the exclusive representative or expenses for special services and liability insurance. I will pay the fair share fee in the amount of $380.75. I understand that if an impartial arbitrator determines the amount owed is less than this amount, the difference will be returned to me.

OPTION 3:

I object to paying any fair share fee prior to the arbitrators decision. I understand that I will be obligated to pay the fair share fee determined by the arbitrator within thirty (30) days following the arbitrator's decision.

(Barber 2nd Supp. R. 39).

Nonmember teachers who did not select an option were automatically placed in Option 3. WCTA contacted the American Arbitration Association ("AAA") and requested that they appoint an arbitrator to determine fair share fees, according to the AAA's "Rules for Impartial Determination of Union Fees." Arbitration hearings were held in January 1994 and January 1995. Based on the information presented, the arbitrator in each case calculated the fair share fee for that year. The nonmember teachers' fair share fee for the 1993–1994 school year was $371.90 and the fee for 1994–1995 school year was $365.32. Following the arbitrators' decisions, WCTA demanded payment from the nonmember teachers. The nonmember teachers refused to pay, and WCTA brought suit to compel payment. Both WCTA and the nonmember teachers moved for summary judgment. The trial court granted the nonmember teachers' motions for summary judgment and denied WCTA's motions for summary judgment. WCTA now appeals these judgments.

## DISCUSSION AND DECISION

### Standard of Review

▉▉▉ The purpose of summary judgment is to end litigation which may be determined as a matter of law and about which there can be no factual dispute.

*Flosenzier v. John Glenn Educ. Ass'n,* 656 N.E.2d 864, 866 (Ind.Ct.App.1995), *trans. denied.* When reviewing a summary judgment ruling, we do not weigh the evidence, but rather we consider the facts in the light most favorable to the nonmoving party in order to determine whether there exist designated genuine issues of material fact concerning an essential element of a claim. *Foursquare Tabernacle Church of God in Christ v. Department of Metropolitan Development of Consolidated City of Indianapolis,* 630 N.E.2d 1381, 1384 (Ind. Ct.App.1994). However, "[d]espite conflicting facts and inferences on some elements of a claim, summary judgment may be proper when there is no dispute regarding facts that are dispositive of the litigation." *Flosenzier,* 656 N.E.2d at 867.

▉▉▉ Although the trial court's findings and conclusions are helpful in clarifying the trial court's rationale, they are not binding on this court. *Mapleturn Utilities, Inc. v. Foxcliff South Associates, Inc.,* 673 N.E.2d 5, 10 (Ind.Ct.App.1996), *trans. denied.* Instead, this court can affirm a judgment on any theory presented by the case. Those other grounds, however, must have been properly designated by the movant and must be otherwise supported by the record. *See Tazian v. Cline,* 673 N.E.2d 485, 488 (Ind.Ct.App.1996), *aff'd* 686 N.E.2d 95 (Ind.1997). If the trial court has incorrectly applied the law to the undisputed facts, this court will reverse a summary judgment. *Mapleturn Utilities, Inc.,* 673 N.E.2d at 12.

The trial court in both cases below denied WCTA's motion for summary judgment and granted the nonmember teachers' motion for summary judgment. Thus, we will review the trial court's judgments under the foregoing standard.

### I. Whether the CBA's fair share provision is unconstitutional.

▉▉▉ WCTA, as an association which is an exclusive bargaining representative of the certified school employees of Whitley County, has the duty in Indiana to represent all teachers included in its bargaining

unit, whether or not they are members of the association. *See* Ind.Code § 20–7.5–1. This duty includes representing all employees within the unit for: 1) collective bargaining under Ind.Code § 20–7.5–1–4; 2) "discussion" with the school employer pursuant to Ind.Code § 20–7.5–1–5; 3) grievance adjustment under the terms of the collective bargaining agreement; and 4) other duties related to its role as exclusive bargaining representative. As the exclusive bargaining representative, WCTA had the right to collect a fair share fee from members of its bargaining unit who were not members of the association, for the costs associated with WCTA's representation in the collective bargaining process. *See Chicago Teachers Union v. Hudson*, 475 U.S. 292, 300, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986); and *Abood v. Detroit Board of Education*, 431 U.S. 209, 229, 97 S.Ct. 1782, 1796, 52 L.Ed.2d 261 (1977).

■ The United States Supreme Court has held that requiring nonmembers to pay a fair share fee for such representation is not unconstitutional; however, the Court has noted that requiring nonmembers to support a collective bargaining representative does impact the nonmembers' First Amendment interests including their freedom of association. *Lehnert v. Ferris Faculty Association*, 500 U.S. 507, 517, 111 S.Ct. 1950, 1957–1958, 114 L.Ed.2d 572 (1991); *Hudson*, 475 U.S. at 301, 106 S.Ct. at 1073; and *Abood*, 431 U.S. at 222, 97 S.Ct. at 1793. Therefore, a union may only charge a nonmember for those activities which are germane to the collective bargaining process and may not charge for political expenditures. *Lehnert*, 500 U.S. at 515, 111 S.Ct. at 1957.

■ To qualify as a "chargeable expenditure," the expenditure must be: 1) germane to collective bargaining activities; 2) justified by the government's policy interest in labor peace and avoiding "free riders;"[5] and 3) not a significant addition to the burdening of free speech inherent in

allowing an agency shop. *Id.*, at 519, 111 S.Ct. at 1959.

Here, the trial court concluded that the fair share provision of the CBA was unconstitutional because the nonmember teachers were obligated to pay a fair share fee in an amount equal to full membership dues of the WCTA. The full membership dues of the WCTA included membership dues for the Indiana State Teachers' Association (ISTA) and the National Education Association (NEA). Further, in the fair share provision, WCTA acknowledges that political and ideological expenses, as well as expenses for other activities unrelated to WCTA's duties as exclusive bargaining representative, are incorporated into the full membership dues.

Thus, the trial court concluded that the fair share provision of the CBA violated the First Amendment of the United States Constitution by requiring that nonmembers pay full fees which included political and ideological expenses. The trial court further concluded that provisions similar to the fair share fee provision at issue herein, which require the payment of full membership dues as a fair share fee, have been struck down by this court. *See Ford v. Madison–Grant Teachers Association*, 675 N.E.2d 734 (Ind.Ct.App.1997), *trans. denied*, and *Anderson v. East Allen Education Association*, 683 N.E.2d 1355 (Ind. Ct.App.1997). Consequently, the trial court decided that the provision in the CBA allowing for the collection of fair share fees was fatally flawed and accordingly, the trial court severed the provision from the CBA and terminated any obligation of nonmembers to pay the fair share fee for the years at issue.

■ WCTA contends that the trial court erred in determining that the fair share provision of the CBA was unconstitutional and that the trial court's reliance on *Ford*, 675 N.E.2d 734, was misplaced. We agree. Our decision in *Ford* is factual-

---

**5.** Freeriders are individuals who benefit from union efforts without paying for union ser-

vices. *Lehnert*, 500 U.S. at 520, 111 S.Ct. at 1960.

ly distinguishable from the case at hand. In *Ford,* we held that if a fair share provision calls for a fair share fee equal to the amount of dues and requires a refund for the return of any portion of the fee challenged as non-chargeable, the provision is unconstitutional because it results in the possibility that the union will have access to improper fees, even if temporarily, in violation of the nonmembers' First Amendment rights. *Id.* at 738–739.

However, in the case at issue, the CBA's fair share provision contains no rebate or refund procedure and includes a clause specifically mandating a reduced fair share fee for objectors. The language in paragraph three of the CBA's fare share provision provides:

> The WCTA recognizes that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities, or other activities, that are unrelated to its duties as exclusive bargaining representative. Consequently, the WCTA agrees that any person who objects to paying for such activities is entitled to pay a reduced fair share fee for objectors.

(Barber R. 95). This language is legally distinct from the constitutionally offensive language in the fair share provision at issue in *Ford* because it does not include a rebate provision for the refund of fees non-chargeable to the nonmember teachers, instead it provides for a reduced fee for objectors.

The nonmembers rely on *Ford* for the proposition that a fair share fee provision that requires a modification or reduction "is not actually a fee which includes only those properly chargeable expenses of collective bargaining." *Id.* at 738. However, because the fair share provision at issue did not require the nonmember teachers to pay a full fee, dispute the fee, and then await a refund of nonchargeable expenses, *Ford* is not applicable.

■ Furthermore, although the fair share fee is defined as an amount equal to the dues paid by WCTA members, the contract must be read as a whole including the foregoing provisions of paragraph three (3) allowing objectors to pay a reduced fair share. A contract's meaning must be determined by an examination of the entire agreement. *Huntington Mortg. Co. v. Debrota,* 703 N.E.2d 160, 164 (Ind.Ct.App.1998) (citation omitted). This court "will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless." *American Family Life Assur. Co. v. Russell,* 700 N.E.2d 1174, 1177 (Ind.Ct.App.1998), *trans. denied.* A complete reading of the fair share fee provision shows that nonmembers are entitled to pay a reduced fair share fee for activities related to WCTA's duties as exclusive bargaining representative which does not require a rebate or refund. If we read the contract as suggested by the nonmember teachers, paragraph three would become meaningless. There is no risk that the funds belonging to nonmember teachers will be temporarily used for improper purposes under the CBA at issue as was the concern in *Ford.*

Thus, we find that the fair share provision of the CBA between WCTA and the School Board is not unconstitutional and is not violative of our decision in *Ford.*

## II. Whether the CBA's fair share provision is procedurally inadequate.

■ The trial court concluded that the fair share provision of the CBA was procedurally inadequate, and thus, unconstitutional because it failed to set forth the procedural safeguards mandated by *Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232. The *Hudson* court required that in order to have a constitutionally adequate fair share collection procedure, the following must be included: 1) "an adequate explanation of the basis for the fee;" 2) "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker;" and 3) "an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.,* at 310, 106 S.Ct. at 1078.

The trial court concluded that the fair share provision of the CBA does not impose on WCTA any obligation to provide objectors with any information concerning the propriety of the amounts requested. The trial court also concluded that the CBA fails to include a provision affording the nonmembers an opportunity for a reasonably prompt decision by an impartial decision maker when a nonmember has an objection to the amount being requested as the fair share fee. The trial court further concluded that the CBA fails to require the maintenance of an escrow account for amounts reasonably in dispute pending the resolution of objections, to eliminate the possibility that any amounts paid by nonmembers are used for non-chargeable expenses.

WCTA argues that the trial court erred in concluding that the fair share provision fails to comply with the protective procedures required by *Hudson*. WCTA claims that it actually implemented the *Hudson* procedures in both fair share years at issue. WCTA contends that no express contractual statement is necessary and the implementation of the procedures is sufficient under the law to comply with *Hudson*.

In an effort to comply with the requirements of the *Hudson* decision, WCTA established certain procedures. These procedures included furnishing an explanation of the fair share fee to nonmember teachers by providing them each year with a packet of financial materials detailing the information used to calculate the expenses properly chargeable to the nonmember teachers. Further, WCTA participated in arbitrations in January 1994 and January 1995, supervised by the American Arbitration Association (AAA), to determine the appropriate fair share fee amount and allow the nonmembers an opportunity to challenge the fee. Finally, WCTA contends that since it did not attempt to collect the fair share fees until after receiving the arbitrator's decision, there was no need for an escrow account since it was not holding the nonmembers' disputed fees. As noted on the Option Sheet provided both years to the nonmember teachers, each nonmember teacher had the option of paying no fee at all until after the arbitrator's decision.

WCTA concludes that the fair share provision at issue is not unconstitutional merely because the *Hudson* procedures were not explicitly set forth in the CBA as long as the nonmembers were in fact afforded these constitutional protections through appropriate procedures.

The nonmember teachers rely on *Ford* for the proposition that the *Hudson* procedural safeguards must be included in the CBA.

*Ford* provides as follows:

[T]he master contract is the sole authorization for the Association to obtain fair share fees from the non-member Teachers and the "fair share fees" of the contract undisputedly contain expenses not properly chargeable for collective bargaining activities. Despite any internal procedure which avoids the plain language of the master contract, the contract clearly provides that payment of those fees is mandatory regardless of their impropriety. Therein lies the fundamental flaw and the infringement on the First Amendment.

*Id.* at 739. Thus, the nonmembers argue that the CBA is the "sole authorization" for WCTA to collect fair share fees from nonmembers and because the CBA does not include the *Hudson* safeguards, the fair share provision of the CBA is unconstitutional.

However, as previously addressed, this case at bar is distinguishable from *Ford*. In *Ford*, the fair share provision of the collective bargaining agreement required nonmember teachers to pay as their fair share fee, full membership dues, and then those nonmembers who objected to paying full dues (which would include financial support for political and ideological activities) could request a refund of the part of their fee that went to the nonchargeable activities. *Id.*, 675 N.E.2d at

736–738. Here, however, the CBA, when read as a whole, does not require nonmembers to pay full membership dues as their fair share fees. Rather, the CBA acknowledges that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities that are unrelated to WCTA's duties as exclusive bargaining representative, and thus, nonmember teachers are entitled to pay a reduced fair share fee for objectors. The CBA in this case does not require a refund or allow the improper use of nonmembers' fees. The conclusion in *Ford* was that because the fair share fee in *that case* included unconstitutional expenses, no outside procedures could make it constitutional. Again, here the fair share fee in the CBA is not unconstitutional, and WCTA is not attempting to make constitutional an unconstitutional fair share fee through outside procedures, as was attempted in *Ford*. Therefore, we conclude that *Ford* does not require that the *Hudson* procedural safeguards be set forth in the CBA when the fair share fee is constitutional.

▪ Furthermore, *Hudson* does not indicate that the procedural safeguards it provides are required to be set out in collective bargaining agreements between teacher's unions and school boards. *Hudson* holds that these procedures are necessary for the constitutional collection of union fees, *Id.*, 475 U.S. at 310, 106 S.Ct. at 1078, but it does not hold that they must be written in the CBA, in addition to being implemented.

Accordingly, we conclude that the trial court improperly decided that the fair share provision at hand was unconstitutional.

III. *Whether there are alternative grounds for affirming the trial court's grant of summary judgment for the nonmember teachers.*

The nonmember teachers claim that there are alternative grounds for this court to affirm the trial court's grant of summary judgment in their favor. They contend that WCTA's collection procedure for the fair share fee is unconstitutional and that the calculation of the fair share fee is also unconstitutional.

The nonmember teachers assert that WCTA failed to comply with the procedural safeguards as required by *Hudson*. (They assert this argument separate from their foregoing argument that the procedural safeguards must be included in the CBA.) The nonmember teachers contend that there was an inadequate disclosure of financial information and that an independent audit of the local association's expenses was not provided. The nonmembers argue that the financial information was constitutionally defective because it contained a list of WCTA's expenditures for the school year two years prior to the school year at issue rather than for the previous school year.

Additionally, the nonmember teachers contend that it is a mandatory requirement under *Hudson* that the WCTA establish an escrow account to maintain disputed fees and that the failure of WCTA to establish such an escrow account was violative of *Hudson* and thereby, unconstitutional. The nonmember teachers also claim that WCTA provided an inadequate procedure for an adjudication of objections by an impartial decision maker. Finally, the nonmembers complain that the arbitrator was selected by WCTA and the arbitrations were held for the most part during the work week when the nonmember teachers were unable to appear.

WCTA contends that its collections procedures were constitutional and were in line with the requirements of the *Hudson* decision. Again, *Hudson* requires a sufficient explanation of the fee, an opportunity to promptly challenge the fee amount before an impartial decision maker, and that any contested funds be placed in escrow while challenges are pending. *Id.*, 475 U.S. at 310, 106 S.Ct. 1066. WCTA claims it provided an adequate explanation of the fair share fee by providing the nonmembers with a packet of financial information in the fall of each year at issue. Further,

WCTA participated in arbitrations which provided nonmembers an opportunity to challenge the fair share fee amount. Finally, WCTA contends that since it does not demand advance payment of fair share fees, an escrow account is unnecessary because WCTA would have no funds to deposit in an escrow account.

We conclude that WCTA properly followed the procedural requirements as set forth in *Hudson*.

■■■■ For the 1993–1994 school year, WCTA provided all nonmembers with an informational packet which included: 1) the 1993–1994 Option Sheet; 2) 1991–1992 WCTA budget; 3) 1991–1992 WCTA Statement of Expenditures; 4) 1992–1993 WCTA budget; 5) ISTA's Report of Fair Share Fee Calculations for 1992–1993, including the Auditor's report; 6) correspondence from the President of WCTA explaining packet contents; and 7) the NEA's 1991–1992 Auditor's Report and Financial Statement and NEA's 1993–1994 Strategic Plan and Budget. (Barber 2nd Supp. R. 39—314).

For the 1994–1995 school year, WCTA provided all nonmembers with an informational packet which included: 1) correspondence from the President of WCTA explaining packet contents; 2) the 1994–1995 Option Sheet; 3) 1992–1993 WCTA Statement of Expenditures; 4) 1993–1994 WCTA budget; 5) 1994–1995 WCTA budget; 6) ISTA's Report of Fair Share Fee Calculations for 1993–1994, including the Auditor's Report; and 7) the NEA's 1992–1993 Auditor's Report and Financial Statement and NEA's 1994–1995 Strategic Plan and Budget. (Barber 2nd Supp. R. 1132—1392).

The nonmember teachers were therefore provided with detailed and voluminous information concerning the expenditures and budgets of each association. However, the nonmember teachers contend that this disclosure was inadequate because information regarding the actual expendi-

tures by WCTA, ISTA and NEA were provided only for the school year two years prior to the year in question, and not the previous school year. The nonmembers cite no authority in support of their proposition that to be constitutionally valid, the expenditure information must be for the previously school year. Furthermore, WCTA asserts that it included in the information packets the most recent, accurate and available information because the association's financial year ends on August 31. Thus, the financial statements and audited information for the prior year was not available at the time the packets were disbursed. We conclude that the provided information is adequate to fulfill *Hudson's* requirement of a "sufficient explanation of the fee." *Id.*, at 310, 106 S.Ct. at 1078.

■■■ Additionally, the nonmember teachers take issue with the Option Sheet,[6] provided in the information package. In reviewing the Option Sheet as a whole, we find that it is not violative of the constitutional requirements of *Hudson*. *Id.* Option three (3) allowed the nonmembers to object and pay no fair share fee prior to the arbitrator's decision. All nonmembers chose this option. This follows the procedural requirements found in *Hudson* by allowing "an opportunity to challenge the amount of the fee before an impartial decisionmaker." *Id.*

■■■ The nonmember teachers also take issue with the fact that the local association's financial records were not subject to an independent audit. In *Hudson*, the Supreme Court mentioned in a footnote that adequate disclosure of financial information would include "verification by an independent auditor." *Id.*, at 307, n. 18. However, it is not clear that *Hudson* would require an audit in every situation. Other jurisdictions have found that the lack of an independent audit of the local association does not render the system

---

**6.** The language of the Option Sheets for both years at issue, is set forth in the foregoing statement of facts.

constitutionally deficient. *Prescott v. County of El Dorado,* 915 F.Supp. 1080, 1090 (E.D.Cal.1996); *Andrews v. Education Association of Cheshire,* 653 F.Supp. 1373, 1377 (D.Conn.1987), *aff'd* 829 F.2d 335 (2d Cir.1987).

> [T]he emphasis on practicality in Hudson ... contraindicates imposition of an annual auditing obligation. These practical considerations must include the ability of a small union to financially afford the procedures required by the Court for maintaining an agency shop [fair share] arrangement. While the union cannot jeopardize the First Amendment rights of the nonmembers for practical reasons, those rights are already protected by requiring the union to explain the breakdown between chargeable and nonchargeable expenditures, to escrow any reasonably disputed fee, and to provide a prompt, neutral procedure by which to challenge the fee.

*Prescott,* 915 F.Supp. at 1090.

In *Hudson,* the Supreme Court was dealing with the Chicago Teachers Union which the Court noted transferred $2,167,000 to its affiliated state and national labor organizations. *Id.,* 475 U.S. at 307, n. 18, 106 S.Ct. 1066. Here, the local association had a 1993–1994 annual school year budget of $3,475.00 and a 1994–1995 budget of $2,800.00. (Barber 2nd Supp. R. 1137—1138). In *Andrews,* the court noted that the requirement of an independent audit "appears to apply only to the union involved in the *Hudson* case itself" and is justified in that case "by that particular union's size and the amount of money involved." *Andrews,* 653 F.Supp. at 1377. Consequently, we find, that under the facts of the case at bar, the lack of an independent audit of the local association, WCTA, does not render the procedures followed by WCTA constitutionally deficient.

■ The nonmember teachers further argue that WCTA failed to follow the procedures set forth in *Hudson* by not having an escrow account. Hudson requires "an escrow for the amounts reasonably in dispute while such challenges are pending."

*Id.,* at 310, 106 S.Ct. at 1078. WCTA logically responds that they did not open an escrow account because they were not holding any disputed fees paid by the nonmembers. As discussed, all of the nonmembers opted for Option 3, and none of the nonmembers paid their fair share fees prior to arbitration. Under these circumstances it is unreasonable to require WCTA to maintain an escrow account as it would have had a zero balance. *Hudson* requires an escrow account only for fees that are in dispute during the time period the challenges are pending. Here, the nonmembers retained possession of their funds while the dispute was pending and WCTA never had possession of the disputed fees.

■ Next, the nonmembers argue that the arbitration procedure was inadequate because the arbitrators were selected by WCTA and the arbitrations were held for the most part during the work week. The arbitrations were held in January 1994 and January 1995 in Indianapolis. A session was held on a Saturday. WCTA contacted the American Arbitration Association and requested that they appoint an arbitrator to determine fair share fees. The AAA appointed the arbitrator for both years at issue. This procedure for the selection of an arbitrator, without input from either party, has been previously approved by this court as meeting the constitutional requirements set forth in *Hudson.* *Anderson v. Yorktown Classroom Teachers Association,* 677 N.E.2d 540, 542 (Ind. Ct.App.1997). Thus, the procedure employed in selecting the arbitrators was not in violation of *Hudson.*

■ Further, the nonmembers argue that because the arbitration was scheduled during a work week, it was not schedule at a convenient time for them to fully participate. However, the nonmembers do not suggest what would have been a more convenient schedule for the arbitration. They concede that a Saturday session was held and that the nonmember teachers could have used personal days to take off

work to attend the other arbitration days if they so desired. It is difficult to fathom any schedule for arbitration that would be completely convenient to all involved. If the arbitration had been scheduled over a school holiday, the nonmembers may argue that it interfered with their vacation plans. Hence, we conclude that the arbitration was conducted within the procedural requirements set forth in *Hudson.*

Thus, we find that the constitutional safeguards enumerated in the *Hudson* decision were adhered to in this matter, and the nonmember teachers' claim that WCTA's collection procedure was unconstitutional is without merit. Therefore, this claim does not provide an alternative ground for this court to affirm the trial court's grant of summary judgment in the nonmembers' favor.

Additionally, the nonmember teachers contend that the calculation of the fair share fee was unconstitutional and that this provides another ground to affirm the trial court's grant of summary judgment in their favor. The nonmember teachers argue that the fee calculation was unconstitutional because it used full dues as one of the elements of the calculation. WCTA replies that the method used for calculating the fair share fee in this case is constitutional. WCTA asserts that it used the same procedure as was approved by this court in *Albro v. Indianapolis Education Association,* 585 N.E.2d 666, 668 (1992) (*adopted in full by reference,* 594 N.E.2d 781 (Ind.1992)). That calculation was set forth as follows: "Teachers and IEA agree the IEA has the burden of proving the ratio of chargeable expenses to total expenses. Once the ratio is established, the ratio, expressed as a percentage, is multiplied by the amount of a member's dues to determine a nonmember's fair share." *Id.* at 668. Thus, WCTA maintains that its calculation, using dues as an element, is a constitutional method of determining the nonmembers' fair share fee.

▮▮▮ The nonmember teachers suggest that WCTA's reliance on *Albro* is misplaced, because the litigants in *Albro* did not challenge the method of calculation. *Id.* The nonmember teachers suggest that the proper calculation of fair share fees is obtained by taking the chargeable expenses of the exclusive bargaining representative and proportionately dividing those expenses among all the members of the bargaining unit. The nonmember teachers further assert that a calculation of fair share fees that includes a component of full membership dues has been held unconstitutional in *FWEA v. Aldrich,* 594 N.E.2d 781 (Ind.1992). This is not correct.

The *Aldrich* case was consolidated with the *Albro* case before the Indiana Supreme Court. *Id.* at 781. In *Aldrich,* the Supreme Court adopted in its entirety the Court of Appeals decision in *Albro* and set aside the Court of Appeals decision in *Aldrich. Aldrich* was remanded to the trial court and the Supreme Court ordered that the trial court's restraining order remain in effect until the FWEA submitted a plan complying with the Court of Appeals decision in *Albro.*[7] However, nowhere in the Supreme Court's opinion does it state that a calculation of fair share fees that includes full membership dues as a component is unconstitutional.

Consequently, the nonmember teachers have failed to show or provide any citation to authority that holds that the method of calculation of the fair share fee was unconstitutional. As the same calculation was mentioned in *Albro* without criticism, we find no constitutional defects with the calculation used by WCTA. *See Id.*

7. In *Albro,* we held that a union must prove its chargeable expenses affirmatively and not merely by proving the amount of its non-chargeable expenses. *Id.* at 669. However, the *Albro* court did not take issue with the method of calculation used by the parties (the ratio of chargeable expenses to total expenses multiplied by the amount of a member's dues),*Id.* at 668, which was the method that was used herein by WCTA.

### IV. *WCTA's motion for summary judgment.*

WCTA filed two motions for summary judgment with the trial court, requesting that the court find that it properly calculated the fair share fee for both the 1993–1994 and 1994–1995 school year. Both of these motions were denied. WCTA argues that as a matter of law, it properly calculated the fair share fee and consequently, the trial court erred in denying WCTA's motions for summary judgment on this issue. The nonmember teachers do not separately respond to this issue raised by WCTA. Based on our conclusion that WCTA properly calculated the fair share fee, we agree with WCTA and remand these cases to the trial court with instructions to enter summary judgment in favor of WCTA.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting the nonmember teachers' motions for summary judgment and in denying WCTA's motions for summary judgment. Therefore, we reverse the trial court's judgment and remand these cases to the trial court with instructions to grant summary judgment in favor of WCTA in both cases below.

Reversed and remanded with instructions.

MATTINGLY, J., and SULLIVAN, J., concur.